In the Matter of TOMAS L. RYAN (Admitted as TOMAS LUIS DE HEREDIA RYAN), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, February 25, 1993

---

**APPEARANCES OF COUNSEL**

*Hal R. Lieberman* for petitioner.

*Gary J. Langer* and *Arthur Karger* for respondent.

**OPINION OF THE COURT**

Per Curiam.

Respondent, Tomas L. Ryan was admitted to the practice of law in New York by the Appellate Division, First Judicial Department, on December 1, 1952 under the name of Tomas Luis de Heredia Ryan. At all times relevant herein respondent has maintained an office for the practice of law within the First Judicial Department.

On August 21, 1989 the Departmental Disciplinary Committee submitted a petition to this Court seeking an order pursuant to 22 NYCRR 603.4 (d), Judiciary Law § 90 (2) and the doctrine of collateral estoppel declaring that respondent had committed acts of professional misconduct in violation of DR 1-102 (A) (4), (6) and DR 5-101 (A) of the Code of Professional Responsibility. The petition was predicated on a decision of the Suffolk County Surrogate's Court, affirmed by the Second Department of the Appellate Division, which had invalidated certain provisions of the last will and testament of a deceased client of respondent and revoked preliminary letters issued to the respondent and his wife. This action was taken by the Surrogate based upon a finding that respondent manipulated and exercised undue influence on his client, in the drafting and execution of her last will and a codicil thereto.

In an unpublished order (M-3195) entered March 7, 1990 this Court granted the Committee's petition to the extent of finding that the Surrogate's decision precluded only an examination of whether respondent's acts constituted a violation of DR 5-101 (A). As to the balance of the charges we stated as follows:

"[I]n the interests of fairness, it does not appear that the respondent should be denied the opportunity to litigate the questions of whether he also violated DR 1-102 (A) (4) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation) and DR 1-102 (A) (6) (engaging in conduct that adversely reflects on his fitness to practice law). The issues of motivation and intent were not fully explored in the Surrogate's proceedings, which focused primarily upon the mental and physical state of the decedent.

"[I]t is not so clear from the evidence presented in the Surrogate's Court proceeding that respondent's actions likewise constituted fraud, in view of his relationship with the decedent for almost 20 years and the apparently close relationship his wife also enjoyed with Mrs. Becker (the deceased).

"While respondent should be estopped from litigating the question of his guilt concerning DR 5-101 (A) and be allowed only to offer evidence in mitigation, with respect to DR 1-102 (A) (4) and (6), in accordance with the procedure adopted in *Matter of Cohn* (M-5696 unpublished order), the Committee may submit the record of the prior proceedings, but respondent should be allowed an opportunity to submit evidence on the merits with respect to the issue of professional misconduct."

On December 19, 1990, the Committee filed formal charges alleging three counts of professional misconduct, specifically, that the respondent has violated DR 5-101 (A), DR 1-102 (A) (4) and (6).

Hearings were held before a Hearing Panel on May 29, 1991, June 19, 1991 and August 7, 1991. In addition to the record of the proceedings in the Surrogate's Court, the Panel considered the testimony of Mr. Ryan, his wife, Viviane Ryan and 14 character witnesses. At the hearings the following facts were adduced.

Respondent is a graduate of Georgetown University and Columbia Law School, where he was an editor of law review. He specializes in the field of estates and trusts and serves on various Bar association committees concerned with that field of law. In his 40 years of practice respondent has had a previously unblemished record.

Respondent's father had been the attorney for Henry Becker, the husband of decedent, Caroline Becker, since 1951. In 1960, respondent entered a partnership with his father for the practice of law under the name of Ryan & Ryan. At that time, Henry Becker became a client of that firm.

Prior to her husband's death, Caroline Becker executed two wills, one on February 2, 1960 and another on June 26, 1970, appointing her husband as executor and the Chase Manhattan Bank as substitute executor and trustee. The will executed on June 26, 1970 was prepared by respondent.

Respondent prepared and decedent executed an inter vivos trust agreement on September 14, 1965 with Chase Manhattan Bank as trustee.

Mr. Becker died on November 11, 1971 leaving an estate in excess of $200,000 to his widow, who was then 86 years of age. Respondent was the attorney for Mr. Becker's estate.

In 1972, after her husband's death, Mrs. Becker was admitted to the Smithtown Nursing Home in Smithtown, New

York. She remained there until July 1973, when she transferred to Smithtown Lodge, which was an adjoining health-related facility under the same ownership for ambulatory persons who did not require skilled nursing care. She remained at Smithtown Lodge until her death, except for several short periods of hospitalization.

At the time of her death in 1977 at age 92, the decedent had two daughters, Marie McLaren and Claire Schlosser, grandchildren and great grandchildren.

Respondent prepared and the decedent executed seven instruments (wills, codicils and amendments to the inter vivos trust agreement) over the seven-year period following her husband's death.

Respondent prepared, and on November 26, 1972, Caroline Becker executed a first codicil to her will of June 26, 1970 appointing respondent as cotrustee and coexecutor with the Chase Manhattan Bank and containing other provisions.

Respondent testified that Mrs. Becker instructed him to name himself as cotrustee and coexecutor because she was not satisfied with the service she was receiving from Chase Manhattan. According to respondent, at that time he was performing more and more services for Mrs. Becker than those ordinarily performed by an attorney. Mrs. Becker would ask him to communicate with Chase with regard to the payment of nurses aides and he would review documents prepared by Chase with regard to Mrs. Becker's assets. Respondent testified that he would tell Mrs. Becker that Chase was the trustee and that Chase should perform these services. According to respondent, he was spending too much time on the work Chase should have been doing and he was not being compensated for it. However, respondent testified that at no time did he encourage Mrs. Becker to name his as a cotrustee with Chase; Mrs. Becker insisted upon it.

On January 18, 1973, decedent executed an instrument prepared by respondent wherein respondent was made cotrustee with the Chase Manhattan Bank under the inter vivos trust agreement of September 14, 1965.

Respondent prepared and on April 2, 1973, decedent executed a will which authorized respondent to appoint a successor corporate executor or trustee for the corporate trustee. This will also made changes in the dispositive provisions of decedent's June 26, 1970 will to reflect Mr. Becker's intervening death, incorporated the provisions of the codicil of November 26, 1972 and made various other changes.

Respondent prepared, and on May 14, 1973, decedent executed a will which contained one material change in paragraph FOURTH thereof granting to each of decedent's grandchildren a bequest of $5,000.

Respondent prepared and, on February 17, 1974, decedent executed another will which omitted the bequest of all personal and household effects to the decedent's daughters.

Respondent prepared and, on February 22, 1976, decedent, now age 91, executed another will in which specific bequests for the grandchildren were omitted and payouts to any child of decedent's daughters were stretched to age 40. A separate codicil, also prepared by respondent, was executed on that day by decedent and contained a bequest to Adrian Bright, a nurse's aide, in the sum of $5,000, conditioned on her still being in the employ of decedent at the time of the latter's death.

Respondent prepared and, on August 15, 1976, decedent executed another will which named respondent's wife, Viviane Ryan, coexecutrix and cotrustee with respondent and Chase Manhattan Bank. This will also extended the duration of the testamentary trusts provided for therein until the death of decedent's grandchildren and enjoined any invasion of the principal of the testamentary trusts for the benefit of the income beneficiaries (in place of the provisions of the prior will authorizing such invasion).

With respect to the appointment of Mrs. Ryan as a cotrustee, respondent testified that Mrs. Becker and Mrs. Ryan had become good friends over the years. Mrs. Ryan would visit Mrs. Becker at the home and she began to handle the problems Mrs. Becker had there with respect to her aides or her room. According to respondent, Mrs. Becker was impressed with Mrs. Ryan and Mrs. Becker asked that she be appointed as cotrustee. Respondent explained to Mrs. Becker that the appointment of Mrs. Ryan would result in three full executor's commissions, and three full trustee's commissions being payable to Mrs. Ryan, respondent and Chase. According to respondent, Mrs. Becker said she understood and wanted the appointment of Mrs. Ryan to be made. Respondent, however, admitted that he failed to advise Mrs. Becker that such commissions could be avoided if Mrs. Becker named respondent's wife as successor executor and trustee, rather than coexecutor and trustee.

With regard to the question whether Mrs. Ryan was quali-

fied to serve as an executor and trustee, the evidence showed that she was born in Morocco and educated there and in Paris. After coming to this country in 1954, she earned Master's and PhD degrees at New York University, in French literature and taught for 15 years at various universities, including New York University, where she attained the rank of assistant professor. After her marriage to respondent in 1973, she completed one year at Cardozo Law School and another semester at New York Law School. At the time of her friendship with Mrs. Becker, Mrs. Ryan was working as a clerk in respondent's law firm. In addition, before coming to this country, she had, for about four years, operated her father's import business in Morocco after his death and managed five small apartment buildings owned by him. Respondent however, admitted that at the time Mrs. Ryan was named coexecutor and cotrustee she had never owned stocks and had no expertise in financial investments. Respondent asserted that Mrs. Ryan had no interest in such matters prior to being required to take such interest when named a cotrustee. Once again respondent claimed that he did not suggest that Mrs. Ryan be named a cotrustee; rather Mrs. Becker asked for her.

Mrs. Ryan testified that Mrs. Becker thought respondent worked too hard and needed help. Mrs. Becker was happy that Mrs. Ryan was working in respondent's office and admired her for helping out. According to Mrs. Ryan, Mrs. Becker relied upon her to answer her calls regarding problems at the home and she wanted Mrs. Ryan to be able to continue to do that in case respondent could not. Mrs. Ryan testified that she would refer investment matters to her husband and she would take care of problems at the nursing home.

On August 15, 1976, decedent also executed an amendment to the inter vivos trust agreement which had been prepared by respondent, appointing respondent's wife, Viviane Ryan, as cotrustee with respondent and Chase Manhattan Bank. The amendment further provided that Viviane Ryan's commissions would be accrued and not payable until the death of Caroline Becker. On that same date, decedent executed a first codicil to the will of August 15, 1976 which increased the bequest to Adrian Bright to the sum of $7,500 (upon the same condition that she be in decedent's employ at the time of the latter's death), which codicil was also prepared by respondent.

On July 14, 1977, while decedent was an in-patient at St. John's Hospital, Smithtown, she executed a second codicil to

the will of August 15, 1976, which was prepared by respondent. In this second codicil, respondent and his wife, as individual executors and trustees, were granted the power to remove the corporate executor or trustee "whether such removal be for cause or without cause, in the event that, in their sole, absolute and uncontrolled discretion, they shall deem it advisable, desirable or expedient to do so" and appoint a successor corporate or individual trustee or executor.

Respondent testified that he had a good working relationship with Chase and had no intention of removing Chase as trustee or executor. According to respondent this clause was added so that Mrs. Becker, who was dissatisfied with Chase, would not require respondent to write another instrument wiping out Chase in the future.

Upon the death of Caroline Becker on October 1, 1977, preliminary letters testamentary were granted to respondent, his wife, Viviane, and Chase Manhattan Bank.

After objections were filed by Robert McLaren, a grandson of decedent, a stipulation was entered into by the parties, whereby the objections were withdrawn and amended objections were filed to the appointment of respondent and his wife as executors and trustees. In a memorandum approving that stipulation, Surrogate Signorelli found that the propounded instruments had been duly executed and that the decedent was in all respects competent to make a will. He also found that, except for the challenged provisions concerning the appointment of respondent and his wife as executors and trustees (which provisions were the subject of a later trial), the will and codicils were valid and were entitled to be admitted to probate.

By order dated March 9, 1992, acting Suffolk County Surrogate Seidell, *inter alia:* (1) declared paragraph EIGHTH of Mrs. Becker's will invalid to the extent that it named respondent and his wife as coexecutors; (2) invalidated his second codicil to the will which had granted respondent and his wife the power to remove the corporate executor/trustee; and (3) revoked the preliminary letters testamentary issued to respondent and his wife. On January 30, 1984, the said order was affirmed by the Second Department of the Appellate Division.

Throughout the proceedings in Surrogate's Court and before the Disciplinary Committee respondent claimed that at all times relevant to his representation of Caroline Becker, he acted in the belief that he was acting at her instance and with her consent.

The 14 character witnesses who testified on respondent's behalf included members of the clergy who testified that respondent is deeply religious and charitable and devotes a great deal of time to *pro bono* activities. In addition, several members of the Bar testified to respondent's honesty, integrity and high moral character.

On May 7, 1992, the Hearing Panel issued its written report and on May 27, 1992 issued an amended report. The Panel concluded in pertinent part as follows:

"At the hearings before this Panel, the Staff essentially limited its proof to the record of proceedings in the Surrogate's Court and to its cross-examination of respondent and his witnesses. Except for probing respondent's evidence, virtually nothing was added to the case previously considered by the First Department. In this connection, the Panel is mindful of the observation made in the First Department's prior opinion when reviewing the record of proceedings in the Surrogate's Court:

" 'There was little or no direct evidence concerning Respondent's motivation and the bulk of his testimony and that of his wife centered upon the claim that they acted in accordance with the decedent's desires and the ministerial acts surrounding the execution of the documents in question.'

"Because respondent and his wife basically repeated their prior testimony, the record of proceedings before this Panel is no more supportive of the two additional charges than that heretofore reviewed by the First Department. Accordingly, those charges were not sustained.

"As to respondent's violation of DR 5-101 (A), Staff Counsel has recommended that respondent be suspended. In view of this Court's precedents and the evidence presented in mitigation, the Panel recommends a sanction of public censure."

By petition dated July 8, 1992, the Departmental Disciplinary Committee now seeks an order confirming the Hearing Panel's report and imposing the recommended sanction of public censure. While at this juncture the Committee does not disagree with the Hearing Panel's conclusions or recommended sanction, it also urges the Court to make a statement alerting the Bar that in future cases where a lawyer acting as the scrivener of a will appoints himself, and, more importantly, appoints his unqualified wife, as cotrustee and coexecutor, that another lawyer be brought in to counsel the testator

and provide a contemporaneous affidavit that the testator was, in fact, fully apprised of the relevant factors.

By cross motion dated August 5, 1992, respondent joins in the Committee's request for an order confirming the Hearing Panel's findings that the charges against respondent based on alleged violations of DR 1-102 (A) (4) and (6) not be sustained and that the sanction to be imposed on respondent for his violation of DR 5-101 (A) be that of public censure. Respondent, however, opposes the Committee's request that this Court make a statement for the guidance of the Bar in future cases, insofar as it implies that respondent engineered his designation and that of his wife as coexecutors and cotrustees, and that his wife was unqualified to serve as a fiduciary.

A review of the evidence presented to the Hearing Panel indicates that the Panel properly concluded that the charges that respondent violated DR 1-102 (A) (4) and (6) were not sustained.

DR 1-102 (A) (4) proscribes "conduct involving dishonesty, fraud, deceit, or misrepresentation". This Court has previously held that "venal intent" is a necessary element of DR 1-102 (A) (4). *(See, Matter of Altomerianos,* 160 AD2d 96, 101.)

When this matter was previously before this Court with respect to the collateral estoppel issue, the Court stated that the issues of motivation and intent were critical to the disposition of both the charge based on DR 1-102 (A) (4) and that based on DR 1-102 (A) (6), which proscribes conduct that adversely reflects on fitness to practice law. Nevertheless, at the hearing no additional evidence was presented concerning motivation and intent than was presented during the Surrogate's Court proceeding. As such, since there was no evidence presented to establish that respondent was motivated by venal intent, the charges that he violated DR 1-102 (A) (4) and (6) cannot be sustained.

In determining that respondent violated DR 5-101 (A) the Panel relied on this Court's previous order precluding any further examination of whether respondent's acts constituted a violation of DR 5-101 (A) based upon the Surrogate's decision that respondent manipulated and exercised undue influence on his client by having his own and his wife's name added as cotrustees and coexecutors under the decedent's will; that he placed himself in the position of making himself incapable of exercising an independent professional judgment on his client's behalf; and he enhanced his position and that of his wife.

In *Matter of Grossfield* (150 AD2d 139) where the respondent was found to have violated DR 5-101 (A); DR 5-104 (A); DR 1-102 (A) (4) and (6), this Court imposed a public censure. *Grossfield, inter alia,* had collected accounts receivable of his clients knowing that the amounts received were to be retained by him on account of a loan, without making disclosure to the clients for the potential for conflicts of interest; and had made loans to his clients and sought repayment thereof without making required disclosure to the clients of the potential for conflicts of interest. In imposing the sanction of censure, the Court took into consideration that in 40 years of practice *Grossfield* had no prior involvement with the disciplinary process.

In light of *Matter of Grossfield (supra)* respondent's previously unblemished record in 40 years of practice and the testimony regarding his charitable activities and community service, we conclude that the sanction of public censure is appropriate here.

Accordingly, the Committee's petition is granted to the extent it seeks an order confirming the Hearing Panel's report and imposing the recommended sanction of public censure. The Committee's request that the Court make a statement alerting the Bar that in future cases where a lawyer acting as the scrivener of a will appoints himself, and more importantly, appoints his unqualified wife, as cotrustees and coexecutors, that another lawyer be retained to counsel the testator and provide a contemporaneous affidavit that the testator was, in fact, fully apprised of the relevant factors, is denied.

EC 5-6 of the Code of Professional Responsibility provides: "A lawyer should not consciously influence a client to name [the lawyer] as executor, trustee, or lawyer in an instrument. In those cases where a client wishes to name [the] lawyer as such, care should be taken by the lawyer to avoid even the appearance of impropriety."

Thus, in cases such as this, the burden is on the attorney to prove that the client is cognizant of all the circumstances. While bringing in another lawyer to counsel the testator and provide an affidavit that the testator was fully apprised of the relevant facts would allow an attorney to easily meet his burden should such transaction be questioned, sufficient cause has not been demonstrated which would warrant making such procedure a formal requirement.

CARRO, J. P., ELLERIN, WALLACH, ASCH and RUBIN, JJ., concur.

Petition granted to the extent it seeks an order confirming the Hearing Panel's report and imposing the recommended sanction of public censure, and respondent is censured.