[634 NYS2d 51]

In the Matter of FRANCIS X. MORRISSEY, JR., an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, November 16, 1995

**APPEARANCES OF COUNSEL**

*Barbara S. Gillers* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

*Peter Fleming, Jr.,* of counsel *(Curtis, Mallet-Prevost, Colt & Mosle,* attorneys), for respondent.

**OPINION OF THE COURT**

Per Curiam.

Respondent, Francis X. Morrissey, Jr., was admitted to the practice of law in the State of New York by the First Judicial

Department on October 15, 1973. At all times pertinent to this proceeding respondent has maintained an office for the practice of law within the First Judicial Department.

On June 23, 1993, this Court entered an order pursuant to 22 NYCRR 603.4 (d) and Judiciary Law § 90 (2), finding respondent guilty of serious professional misconduct. Applying the doctrine of collateral estoppel to the findings of the United States District Court for the Southern District of New York in *Mar Oil v Morrissey* (782 F Supp 899 [SD NY 1992], *affd in relevant part* 982 F2d 830 [2d Cir 1993]), this Court concluded that respondent had violated Code of Professional Responsibility DR 1-102 (A) (4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), DR 1-102 (A) (6) (now [8]) (engaging in conduct that adversely reflects on fitness to practice law), and DR 2-106 (A) (which prohibits charging an excessive fee), and referred the matter to the Committee for a hearing on sanction.

The Federal courts found that in March 1980, a Spanish corporation, Mar Oil S.A., suffered the loss of a supertanker which was insured for some $42 million. Mar Oil collected from all of its insurers save one, New Hampshire Insurance Company, which had about $10.6 million of the coverage. The claim against New Hampshire was litigated in Spain and in the Federal courts in New York. Respondent was the first American lawyer retained by Mar Oil. In his relatively brief career at the Bar, respondent had rarely been involved in litigation, and had no maritime insurance litigation experience. As such, he quickly associated an experienced maritime law firm, Healy & Baillie, which did the overwhelming share of legal work.

The matter was finally settled for $8,060,000 which was paid into respondent's escrow account.

In mid-June 1983, at about the time of New Hampshire's settlement payment, respondent requested a fee of $960,000. He claimed that he had provided 5,205 hours of service to Mar Oil. Mar Oil's representative, Monzon, rejected respondent's request for several reasons. Mar Oil paid fees of only $126,250 to Healy & Baillie and the equivalent of $242,500 to its attorneys handling the action in Spain for all of their respective services in connection with the underlying dispute. Monzon considered respondent's demand disproportionate since Healy & Baillie had done virtually all of the litigation work with re-

spect to the New York action and the work of the Spanish attorneys had constituted a vital, if not the major, reason for the ultimate settlement. Monzon demanded an accounting of respondent's time. Respondent never provided one. Instead, in July 1983, respondent simply withdrew $960,000 from the Mar Oil escrow account, made an authorized payment of $34,324.62 to Healy & Baillie, and kept the remaining $925,675.38 for himself.

Respondent testified at trial that he made the withdrawal because a few days after he made his fee demand, Monzon telephoned him from Spain and agreed that Mar Oil would pay him $960,000. Monzon denied this and the District Court found "that no such oral agreement was ever made, and that the withdrawals by the defendant for his personal benefit from the escrow account set up for the benefit of the plaintiff, were entirely unauthorized and unjustified as a measure of the fees due defendant." (782 F Supp, *supra,* at 906.)

Mar Oil learned of the unauthorized withdrawal in November 1983 and repeatedly demanded that respondent return the money. In response, respondent represented to Monzon that $925,675.38 remained intact pending resolution of the dispute over respondent's fee. The District Court found that this representation was false. In fact, respondent expended those funds for his own personal use. Respondent paid $20,000 to his brother-in-law, $10,000 to his secretary, and used the funds to pay his State and City estimated taxes for 1983.

On February 2, 1984, Monzon met with respondent twice. At the first meeting they discussed an accounting for respondent's authorized disbursements from the escrow account. They also discussed respondent's contention that he had worked more than 5,000 hours on Mar Oil's behalf. Respondent promised that he would prepare an accounting and propose a compromise with respect to his fee.

The second meeting on February 2 was held briefly in mid-afternoon as Monzon, about to return to Madrid, was rushing to the airport. In this meeting, respondent presented Monzon with a two-page letter with attachment, accounting for deposits to and withdrawals from the Mar Oil escrow account. The first paragraph of the letter stated as follows: " 'In June of 1983 I received on your behalf checks in the amount of $8,000,000. and $60,000., with your instructions that these funds be deposited in an account at Morgan Guaranty Trust Company in New York. Accordingly, on June 8, 1983 I deposited $60,000. and on June 20, 1983 $8,000,000. in an Escrow Account at

Morgan Guaranty. On July 8, 1983, Morgan Guaranty was sent notice to change the account from a Mar Oil Escrow Account to a Non-Resident Alien Account for your benefit which was accomplished on July 11, 1983. On July 11, 1983 I disbursed $960,000. from this account pursuant to your instructions to pay United States fees and costs including Francis X. Morrissey, Jr., Healy & Baillie, and other costs and disbursements, as set forth in the attached statement dated July 11, 1983.' " (982 F2d, *supra,* at 835.)

The second paragraph of the letter began " 'Pursuant to your instructions to me received from time to time, I made the following disbursements from the Morgan account' " and listed in tabular form eight disbursements. *(Supra,* at 835.) Respondent's $925,675.38 payment to himself was not included in this list.

The second page of the letter included a release clause, holding respondent harmless " 'against any and all liability * * * by reason of my having deposited these funds in the Morgan account and disbursed these funds pursuant to your instructions. This agreement to indemnify and hold me harmless shall include any claim made against me on account of services to you or Mar Oil' ". *(Supra,* at 835.)

Respondent did not discuss with or point out to Monzon the part of the letter that approved his demand for the additional fees. Further, respondent failed to discuss with Monzon the implications of his signing a letter which recorded $925,675.38 (part of the $960,000) as one of the withdrawals and how this was affected by the release clause also included in that letter.

Monzon testified that he signed the document in haste and that he did not recognize anything in it which purported to approve the claimed fee of $925,675.38.

Respondent did not provide Monzon with a copy of the February 2 letter.

Numerous efforts to persuade respondent to return the $925,675.38 proved unsuccessful, and indeed, despite repeated requests for documents, respondent refused even to provide Mar Oil with a copy of the February 2 letter until 1986. Shortly after receiving that document, Mar Oil commenced the Federal lawsuit.

The District Court found that the only agreement between the parties concerning respondent's fee was that of October 31, 1980, calling for an agreed and reasonable compensation based on time spent. The District Court found that respondent, in

breach of his fiduciary duty, appropriated to himself $925,675.38 from the escrow account, even before the February 2 letter was signed. This withdrawal was found to be unauthorized and could not be explained by any of the theories advanced by respondent. Moreover, the court found that respondent used portions of the unauthorized withdrawal for his own personal use.

The District Court concluded that respondent's February 2 letter "overreached the client and was a calculated breach of fiduciary duty in conception and in execution relative to the manner in which it was presented, explained and obtained and the actual withdrawals." (782 F Supp, *supra*, at 909.) The court termed respondent's actions in obtaining the signature "unconscionable". *(Supra*, at 912.)

The court concluded that respondent was entitled to compensation only at a reasonable rate on an hourly basis. As to the value of respondent's services, the court noted that prior to October 1980 respondent had no maritime insurance litigation experience. The court found that his participation in the New York action was not particularly significant or fruitful. In the New York action, though respondent had drafted an affidavit, read some documents, and attended depositions with Healy & Baillie attorneys, Healy & Baillie, not respondent, had done the overwhelming share of the work, including conducting all of the legal research, preparing legal opinion letters to Mar Oil, preparing all legal memoranda and all other legal documents dealing with the various motions, taking the depositions of all the witnesses, and obtaining and responding to documentary discovery. The District Court found respondent's contention, that he had done the " 'lion's share' " of the legal work, to be absurd and concluded that at best respondent merely assisted "in communications[,] controlling costs, as a 'middle man;' and as a 'strategist.' " *(Supra*, at 903.)

After finding that respondent had spent a total of 1,200 hours in the service of Mar Oil and that $200 per hour would be reasonable compensation, the court ruled that Mar Oil was obliged to pay him a total of $240,000 in fees, of which $61,000 had been paid. It concluded that, from the amount wrongfully withdrawn from the Mar Oil escrow account, respondent owed Mar Oil $807,675.38.

The United States Court of Appeals for the Second Circuit affirmed the District Court's findings but found that both the number of hours of service and the hourly rate of compensation utilized by the District Court were too high. The Court of

Appeals remanded the case for further calculation of the hours of service performed, with doubts to be resolved against respondent since he kept no time records, as well as a determination of a reasonable hourly rate not to exceed $185. However, a consent order dated January 27, 1993 was entered by the parties in which respondent consented to a judgment of $1,500,000 in satisfaction of all aspects of the litigation.

On the basis of the Federal decisions, this Court, in its June 23, 1993 order, declared respondent guilty of violating DR 1-102 (A) (4) and (6) (now [8]) and DR 2-106 (A), and referred this matter to the Committee for a hearing on sanction.

The hearing was held before a Hearing Panel on October 4, 1994 and November 1, 1994. The only witness at the hearing was the respondent. The Panel also reviewed 20 letters which were submitted on respondent's behalf attesting to his good character.

At a pretrial conference, respondent asked that the Panel consider sanctions for violation only of DR 2-106 (A)—charging an excessive fee. Reading this Court's order as giving them a broader responsibility, the Panel denied the motion and ruled that they would consider sanctions also for violation of DR 1-102 (A) (4)—deceit, etc.—and (6)—conduct that adversely reflects on the lawyer's fitness to practice.

Respondent then sought leave to call a document examiner and an ethics professor, both to demonstrate that respondent had done no wrong. The Panel refused to hear this proffered relitigation of the merits, holding itself precluded by the rulings of the Federal courts and of this Court.

At the conclusion of the hearing, Staff Counsel recommended that respondent should be disbarred. Respondent's counsel asked that a private reprimand be imposed.

On January 4, 1995 the Hearing Panel issued its written report recommending that respondent should be suspended from the practice of law for a period of two years. The Hearing Panel concluded in pertinent part as follows:

"We are presented here with a lawyer who overreached incredibly, who has a most unusual notion of compensable time, and who in a deceptive manner obtained his client's signature on a document aimed at validating his misconduct. * * *

"We are tempted to recommend the ultimate sanction. We are deterred only by these considerations.

"First, respondent's record is free of other blemish, and the letters submitted in his support are persuasive that he has

generally behaved as a decent and responsible member of the community and of his profession.

"Second, while respondent's conduct in this matter is totally blameworthy, he concealed what he did in only one regard, his statement to Monzon that he was preserving intact the money he had appropriated, when in fact he had appropriated some of the money to his own purposes. In effect, respondent's position with his client was that Mar Oil would have to sue to recover its funds. * * *

"Despite our caution that he might be hurting his own cause on sanction, respondent insisted here that he had done nothing wrong. But we find it hard to view this as aggravating behavior. We prefer the view that, despite the powerfully-articulated and unanimous views of four federal judges, respondent did not yet get the message."

After reviewing the cases brought to its attention by the parties, the Hearing Panel concluded as follows:

"Having in mind these cases and the many others we have considered, and endeavoring to take account of all the circumstances here, we unanimously recommend that respondent be suspended for two years.

"A longer suspension would risk destruction of respondent's career, and while we are quite disturbed by the conduct here under review, we are not convinced he is a totally lost cause. Rather, we would expect that, when and if he applies for reinstatement under § 603.14, there will be a most careful inquiry into the question of whether he then possesses the requisite character and general fitness to resume the practice of law."

By petition dated March 8, 1995, the Departmental Disciplinary Committee now seeks an order confirming the Hearing Panel's report and imposing whatever sanction this Court deems just and equitable in the circumstances, but no less than the two-year suspension recommended by the Hearing Panel.

By cross motion dated May 18, 1995 respondent seeks an order confirming the recommendation of the Hearing Panel that he be suspended from the practice of law for a period of two years unless this Court, in its wisdom, concludes that a lesser sanction, including a shorter period of suspension, is appropriate in the circumstances.

By order entered June 23, 1993, this Court, applying the doctrine of collateral estoppel to the findings of the United States District Court for the Southern District of New York in *Mar*

*Oil v Morrissey* (782 F Supp 899 [SD NY 1992], *affd in relevant part* 982 F2d 830 [2d Cir 1993], *supra),* concluded that respondent had violated DR 1-102 (A) (4) (dishonesty) and (6) (now [8]) (fitness), and DR 2-106 (A) (prohibiting an excessive fee). Thus, while respondent attempts to reargue the findings of professional misconduct by the Federal courts and this Court, the only remaining issue to be determined here is the appropriate sanction to be imposed.

Respondent has been found guilty of helping himself to a grossly excessive fee from an escrow account without authorization, making a false representation to the client about whether those funds were intact pending the resolution of a dispute over his fee, and engaging in a calculated breach of his fiduciary obligations by securing the client's signature on a letter aimed at validating his misconduct. While respondent's misconduct warrants a substantial sanction, disbarment would not be justified under the circumstances of this case.

The two disbarment cases relied upon by the Committee are clearly distinguishable from the case at bar. In *Matter of Malatesta* (124 AD2d 62, *lv denied* 69 NY2d 607, *cert denied* 484 US 829), there were repeated incidents by the attorney of commingling and converting multiple clients' funds. The clients were never notified that their accounts were being overdrawn. In addition, Malatesta accepted a settlement offer without notifying his client; instead, he simply forged his client's signature on the general release and then notarized the signature himself. In *Matter of Pressment* (118 AD2d 270, *lv denied* 68 NY2d 608), the attorney agreed to act as an escrow agent for his client and then used the funds for his own personal obligations. Pressment admitted that on at least three separate occasions, the checks he wrote from the escrow account to his client were returned for insufficient funds. Pressment also conceded that his actions as an escrow agent were wrong but argued that it did not rise to the level of fraud or deceit since he was helping himself to his legal fee which had not been paid. The Court rejected Pressment's claim since there was no notice, contemporaneous or subsequent, of the withdrawal of the funds; there was no previous bill or documentation to evidence the supposed entitlement to the fee; and there was no maintenance of the funds intact or identifiable.

In recommending that a two-year suspension be imposed upon respondent the Hearing Panel relied upon the case of *Matter of Klein* (183 AD2d 279, *lv denied* 81 NY2d 703). *Klein* involved an attorney who had practiced before the United

States Patent and Trademark Office (PTO). The Hearing Panel in his case found that he had neglected 11 matters before the PTO. To cover up this neglect, Klein had falsely certified the dates on which he had submitted documents to the PTO. These false certifications lay at the heart of the Committee's later proceedings against Klein. The Court further found that Klein had not been forthcoming at his disciplinary hearing, that he had portrayed himself as a victim and that he has "displayed hostility towards his perceived antagonists at the PTO." *(Supra,* at 280.) Like respondent, Klein had been found guilty of professional misconduct on the basis of collateral estoppel (precluding him from challenging the findings of the United States District Court and the United States Court of Appeals). On that record, Klein was suspended by this Court for two years.

While in many ways the case at bar is more analogous to those cases referred to above involving attorneys who helped themselves to escrow funds claiming they were entitled to such funds as legal fees, than it is to *Klein (supra),* there are several mitigating factors present in this case which make the recommended sanction of suspension for two years more appropriate than disbarment. At the outset, in 21 years of practice, respondent has an otherwise unblemished disciplinary record. In addition, the case at bar involves one incident and not a pattern of misconduct. Moreover, prior to the withdrawal of the funds, respondent had demanded said fee from the client which request, the record indicates, was turned down, thus indicating that there was an ongoing fee dispute between the parties. While said fact does not justify respondent engaging in self-help measures and withdrawing his claimed fee from the settlement proceeds he was holding in escrow on behalf of his client, it does distinguish this case from those in which escrow funds are appropriated with fraudulent intent.

Accordingly, respondent's cross motion is granted to the extent it seeks an order confirming the Hearing Panel's recommended sanction of suspension from the practice of law for a period of two years and the Committee's petition is granted, the Hearing Panel's report confirmed and respondent is suspended from the practice of law for a period of two years, effective forthwith.

MURPHY, P. J., ELLERIN, RUBIN, ROSS and ASCH, JJ., concur.

Petition granted, the Hearing Panel's report confirmed and respondent is suspended from the practice of law for a period

of two years, effective immediately, and until the further order of this Court; cross motion for an order confirming the recommendation of the Hearing Panel granted to the extent of suspending respondent from the practice of law, as indicated.