(May 31, 2000)

■ In the Matter of ANDREW F. CAPOCCIA, an Attorney, Respondent. COMMITTEE ON PROFESSIONAL STANDARDS, Petitioner. [709 NYS2d 640] —Per Curiam. Respondent was admitted to practice by this Court in 1974 and maintains offices throughout New York. He represents thousands of debtors, many of whom have defaulted on their credit cards and other consumer debts. In defense of the ensuing collection actions, respondent typically asserts one or more of the following affirmative defenses and/or counterclaims: failure to state a cause of action, unconscionability, failure to comply with Personal Property Law §§ 402, 413 and 415, failure to comply with the Federal Truth in Lending Act (15 USC § 1601 *et seq.*) and failure to comply with General Obligations Law § 5-702.

Between June 16, 1998 and March 31, 1999, at least 22 Justices and Judges in well over 70 consumer collection cases throughout Supreme Court and various County, Civil and City Courts determined that these defenses and/or counterclaims were completely without merit and in many instances were interposed without fully investigating whether a factual basis existed to warrant same resulting in respondent's admonishment or sanction (*see,* 22 NYCRR part 130). A common finding in many of these decisions sanctioning or warning respondent was that he had intentionally engaged in a course of conduct whereby he barraged the court system with meritless and "canned" defenses and counterclaims as a tactic to force settlements. Many of these Justices and Judges further found that this conduct exhibited a complete disregard for, and manipulation of, the judicial system by tying up its limited resources and preventing the courts from addressing legitimate legal disputes. For example, in *Providian Natl. Bank v McGowan* (179 Misc 2d 988, 995), it was noted: "[Respondent] attempt[s] to shoehorn laws and legal concepts to a set of facts where they have no application. [Respondent] puts forth defenses and counterclaims that ignore the simplicity of the plaintiff's claim, disregard the plain meaning of the statutes on which they are based, and offer conclusory allegations where a complex analysis of the facts is required. In short, the arguments are completely without merit in law." Sixteen of these cases, as well as one Federal case in which respondent was sanctioned for failing to comply with local rules, form the basis of the instant petition filed by petitioner, the Committee on Professional Standards, alleging four charges of professional misconduct.

All four charges accuse respondent of violating the following

Code of Professional Responsibility provisions: DR 1-102 (a) (4), (5) and (7) (22 NYCRR 1200.3 [a] [4], [5], [former (8)]) and DR 7-102 (a) (1) and (2) (22 NYCRR 1200.33 [a] [1], [2]). Specifically, respondent is accused of engaging in conduct involving dishonesty, fraud, deceit or misrepresentation (DR 1-102 [a] [4]), engaging in conduct that is prejudicial to the administration of justice (DR 1-102 [a] [5]), engaging in conduct that adversely reflects on his fitness to practice law (DR 1-102 [a] [7]), filing a suit, asserting a position, conducting a defense, delaying a trial, or taking other action on behalf of a client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another (DR 7-102 [a] [1]), and knowingly advancing a claim or defense that is unwarranted under existing law which could not be supported by a good-faith argument for an extension, modification or reversal of existing law (DR 7-102 [a] [2]). Charge I, in seven specifications, alleges that respondent was financially sanctioned for repeatedly asserting frivolous and/or meritless defenses, counterclaims and cross claims on behalf of clients, in violation of these five disciplinary rules. The seven specifications cite eight consumer collection cases in which respondent was sanctioned between July 8, 1998 and March 31, 1999 in amounts ranging from $500 to $10,000.

Charge II, in 13 specifications, alleges that respondent engaged in the conduct of repeatedly asserting frivolous and/or meritless defenses, counterclaims and cross claims on behalf of clients, in violation of the aforementioned disciplinary rules. The 13 specifications cite 14 consumer collection cases in which respondent was either sanctioned, warned or placed on notice of a hearing for his assertion or continued assertion of defenses and counterclaims which were wholly without merit, frivolous and/or bordering on frivolous. Charge III, in five specifications, alleges that a sanction of counsel fees and/or costs was assessed against respondent for repeatedly asserting frivolous and/or meritless defenses, counterclaims and cross claims on behalf of clients, again in violation of the aforementioned disciplinary rules. These specifications cite five consumer collection cases in which costs and fees were assessed against respondent in amounts ranging from $153.75 to $3,009.14 for engaging in frivolous conduct by continuing to assert the meritless defenses and/or counterclaims. Charge IV contains one specification and alleges that respondent was financially sanctioned in Federal court in one particular case for failing to comply with local rules.

Respondent's motion to dismiss the petition or, in the

alternative, for an order staying its prosecution pending his appeal of four of the subject cases was partially granted by this Court, i.e., we dismissed so much of charge IV as alleged a violation of DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]) but otherwise denied the motion. Pursuant to 22 NYCRR 806.5, petitioner now moves for an order declaring that no factual issues are raised by the pleadings, applying the doctrine of collateral estoppel to the findings of the respective trial courts and fixing a time for respondent to be heard in mitigation or otherwise. Respondent opposes summary adjudication of the charges and alternatively requests a hearing in mitigation.

Petitioner seeks to find respondent guilty of professional misconduct pursuant to the doctrine of collateral estoppel, a procedural concept that is not entirely foreign to attorney disciplinary matters before the Appellate Division of this State (*see, e.g., Matter of Babigian*, 247 AD2d 817, *lv denied* 91 NY2d 813, *cert denied* 525 US 1003; *Matter of Yao*, 231 AD2d 346; *Matter of Sylvor*, 225 AD2d 87; *Matter of Morrissey*, 217 AD2d 74; *Matter of Ryan*, 189 AD2d 96; *Matter of Slater*, 156 AD2d 89). In *Matter of Cohn* (M-5696 unpublished order), the First Department, citing *Schwartz v Public Adm'r of County of Bronx* (24 NY2d 65), unequivocally endorsed the application of common-law collateral estoppel in disciplinary proceedings provided that the prerequisites for invocation of the doctrine were satisfied. Although the Court declined to apply the doctrine in that case, *Matter of Cohn* confirmed that *civil* findings of courts in this State may be preclusively applied in attorney disciplinary proceedings.

Since *Matter of Cohn (supra)*, the First and Third Departments have indeed applied this doctrine in attorney disciplinary proceedings to preclude an attorney from relitigating civil findings. In *Matter of Morrissey* (M-1285 unpublished order), the First Department granted a petition by its Departmental Disciplinary Committee seeking an order pursuant to 22 NYCRR 603.4 (d), Judiciary Law § 90 (2) and the doctrine of collateral estoppel finding the respondent guilty of professional misconduct in violation of three disciplinary rules based upon a finding made in a Federal matter that he charged an excessive fee (*see, id.; see also, Matter of Morrissey*, 217 AD2d 74, *supra*). The First Department precluded the respondent from contesting this finding *and* further concluded that such conduct not only violated DR 2-106 (a) (22 NYCRR 1200.11 [a]; charging an excessive fee), but also violated DR 1-102 (a) (4) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation) and DR 1-102 (a) (6) (now [7]; engaging in conduct

that adversely reflects on fitness to practice law) (*see*, *id.*). In *Matter of Babigian* (*supra*), this Court collaterally estopped the respondent from relitigating the finding of a Federal lawsuit that he had filed frivolous claims against, among others, the Chief Justice of the United States Supreme Court. In that Federal action—which was dismissed by the District Court— the respondent was sanctioned. The District Court found not only that the action was frivolous but that the respondent had been previously warned by the Second Circuit that further prosecution of such claims would be frivolous and would subject him to costs and sanctions. This Court, after granting petitioner's motion for an order declaring that no factual issues were raised by the pleadings and collaterally estopping the respondent from relitigating the findings of the Federal lawsuit, found him guilty of DR 7-102 (a) (1) and (2), as well as DR 1-102 (A) (5) and (7) (*see*, *id.*).

Having thus established that collateral estoppel is applicable to attorney disciplinary proceedings, we address whether it should be specifically applied in this proceeding. There are two requirements for the application of collateral estoppel, namely, (1) there must be an identity of issue which has necessarily been decided in a prior action and is decisive of the present proceeding, and (2) there must have been a full and fair opportunity to contest the determination now said to be controlling (*see*, *Kaufman v Eli Lilly & Co.*, 65 NY2d 449, 455; *Schwartz v Public Adm'r of County of Bronx*, *supra*). The burden rests upon petitioner, as its proponent, "to demonstrate the identicality and decisiveness of the issue[s]", whereas respondent has the ultimate burden of establishing the absence of a full and fair opportunity to litigate (*Ryan v New York Tel. Co.*, 62 NY2d 494, 501).

The precise issue before the respective trial courts was whether respondent acted frivolously within the meaning of 22 NYCRR 130-1.1 (c) by engaging in conduct that was completely without merit in law and which could not be supported by a reasonable argument for an extension, modification or reversal of existing law; by engaging in conduct undertaken primarily to delay or prolong the resolution of litigation or to harass or maliciously injure another; and/or by asserting material factual statements that were false (*see*, 22 NYCRR 130-1.1 [c] [1]-[3]). In so deciding, these trial courts were to consider "the circumstances under which the conduct took place, including the time available for investigating the legal or factual basis of the conduct, and whether or not the conduct was continued when its lack of legal or factual basis was apparent, should have

been apparent, or was brought to the attention of counsel" (22 NYCRR 130-1.1 [c]).

Notably, on nine occasions, respondent was found to have engaged in frivolous conduct by continuing to assert a position that was without basis in law and which could not have been supported by a reasonable argument for an extension, modification or reversal of existing law (*see, Sears, Roebuck & Co. v Ruede*, Albany City Court, July 8, 1998, Stein, J. [charge I, specification 1; charge II, specification 1; charge III, specification 1]; *Providian Natl. Bank v Whiteman*, Sup Ct, Otsego County, Dec. 18, 1999, Mugglin, J. [charge I, specification 3; charge II, specification 3]; *Citibank v Latino*, Sup Ct, Oswego County, Feb. 5, 1999, Nicholson, J. [charge I, specification 4; charge II, specification 4]; *Providian Natl. Bank v McGowan*, 179 Misc 2d 988, *supra* [charge I, specification 5; charge II, specification 5; charge III, specification 3]; *Trustco Bank, Natl. Assn. v Neal*, Sup Ct, Albany County, Mar. 24, 1999, Teresi, J. [charge I, specification 6; charge II, specification 6]; *Citibank v Jones*, Sup Ct, Albany County, Mar. 24, 1999, Teresi, J. [charge I, specification 6; charge II, specification 6; charge III, specification 4]; *Providian Natl. Bank v McGowen*, Sup Ct, Saratoga County, Mar. 31, 1999, Keniry, J. [charge I, specification 7; charge II, specification 7]; *State Empls. Fed. Credit Union v Farrell*, Sup Ct, Albany County, Feb. 22, 1999, Hughes, J. [charge III, specification 2]; *Providian Natl. Bank v Lamanec*, Sup Ct, Greene County, Mar. 25, 1999, Cobb, J. [charge III, specification 5]). On seven occasions, he was found to have engaged in frivolous conduct by engaging in conduct primarily to delay or prolong the resolution of the litigation (*see, Providian Natl. Bank v Whiteman, supra; Citibank v Latino, supra; Trustco Bank, Natl. Assn. v Neal, supra; Citibank v Jones, supra; Providian Natl. Bank v McGowen, supra; State Empls. Fed. Credit Union v Farrell, supra; Providian Natl. Bank v Lamanec, supra*).[1] On three occasions, he was found to have engaged in frivolous conduct by submitting false papers and/or asserting false statements (*see, Providian Natl. Bank v Whiteman, supra; Citibank v Jones, supra; State Empls. Fed. Credit Union v Farrell, supra*).

Moreover, in two cases where sanctions were requested but not granted by the trial court, respondent was nevertheless admonished that his defenses and counterclaims were "wholly without merit, and bordering on the frivolous" and he was

---

1. In one particular case, the court further noted that respondent asserted such defenses and counterclaims without regard to whether same were truthful in fact (*see, Providian Natl. Bank v Whiteman, supra*).

"strongly cautioned that future submissions which lack substance and merit (as these do in this case) will be dealt with under the Rules of this Court" (*Providian Natl. Bank v Hale*, Sup Ct, Albany County, Dec. 23, 1998, Teresi, J. [charge II, specification 8]; *Providian Natl. Bank v Barber*, Sup Ct, Albany County, Dec. 11, 1998, Teresi, J. [charge II, specification 9]). In other instances where sanctions were requested, it was determined that "there [was] a reasonable basis to believe that the defense * * * was 'undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure' the plaintiff", thus warranting a sanction hearing (*First Deposit Natl. Bank v Van Allen*, County Ct, Rensselaer County, Apr. 2, 1999, McGrath, J. [charge II, specification 10]) or that respondent was found to have engaged in "arguably frivolous conduct" warranting written submissions or a hearing (*First Deposit Natl. Bank v Foland*, Albany City Court, Jan. 8, 1999, Stein, J. [charge II, specification 11]; *see, Providian Natl. Bank v Kolceski*, Sup Ct, Madison County, Feb. 26, 1999, O'Brien, III, J. [charge II, specification 12]; *Providian Natl. Bank v Forrester*, Sup Ct, Cortland County, Mar. 30, 1999, Rumsey, J. [charge II, specification 13]). Finally, four trial courts expressly found that respondent continued his frivolous conduct even after the lack of a legal and factual basis was, or should have been, apparent (*see, Citibank v Latino, supra; Providian Natl. Bank v McGowan, supra; Trustco Bank, Natl. Assn. v Neal, supra; Citibank v Jones, supra; State Empls. Fed. Credit Union v Farrell, supra*) and one court expressly found that he had ample opportunity to investigate the factual and legal basis for this conduct (*see, Providian Natl. Bank v McGowan, supra*).[2]

The common and decisive issue resolved in these cases, which would otherwise be decided by this Court in the instant disciplinary proceeding, is whether respondent did in fact engage in the aforesaid frivolous conduct in defending routine consumer collection matters resulting in repeated sanctions, the awarding of costs and counsel fees and/or warnings for frivolous conduct. Satisfied that an identity of issue exists (*see, Matter of Latimore*, 252 AD2d 217, *lv dismissed* 93 NY2d 995; *Matter of Kramer*, 235 AD2d 87, *lv denied* 91 NY2d 805, *lv dismissed and lv denied* 93 NY2d 883, *cert denied* — US —,

---

2. We decline to apply collateral estoppel to one of the 17 decisions outlined in the petition—*General Elec. Capital Corp. v Mann* (Sup Ct, Onondaga County, Sept. 22, 1998, Murphy, J. [charge I, specification 2; charge II, specification 2])—since the order in that case fails to set forth the findings supporting the imposition of the sanction. These specifications are accordingly dismissed.

120 S Ct 169 [Oct. 4, 1999]), we turn to respondent's argument that application of collateral estoppel in this proceeding would be unlawful and unfair because it would preclude him from proving, in a hearing before this Court, that each of the Justices or Judges who sanctioned him misapplied and misconstrued the rule prohibiting frivolous conduct, in effect "penalizing" him for "creative" advocacy. In short, respondent argues that each of the sanctioning and/or admonishing trial courts was *wrong* since his conduct was not frivolous, i.e., he contends that the defenses and counterclaims were "legally correct".

Arguing that the adverse findings were erroneous, however, completely misses the mark. Respondent must refute petitioner's showing that an *identity of issue* exists which he had a full and fair opportunity to litigate. By opposing the motion in the manner that he does, respondent confirms that he is merely seeking a second forum to *relitigate* the identical issues already decided adversely against him, a position antithetical to one attempting to oppose collateral estoppel. Needless to say, the underlying intent of the collateral estoppel doctrine is to conserve judicial time and resources by precluding a party from relitigating an issue which has been resolved against him or her in another action (*see, Schwartz v Public Adm'r of County of Bronx,* 24 NY2d 65, *supra*). Respondent further claims that collateral estoppel should not be applied because the quantum of proof required to sustain a finding that he engaged in frivolous conduct differs from that required to sustain a finding that he is guilty of professional misconduct. Putting aside the fact that the standard is precisely the same— fair preponderance of the evidence (*see, Matter of Capoccia,* 59 NY2d 549, 551)—this argument is mere sophistry. Petitioner seeks to apply collateral estoppel merely to preclude respondent from relitigating whether he was found to have engaged in sanctionable frivolous litigation tactics. The different question of whether such conduct constitutes a violation of the disciplinary rules is an issue of law for this Court.

In pursuing his argument that the sanctioning trial courts erred, respondent makes repeated references to 27 "favorable" decisions wherein "many of the legal positions taken by [him] which are criticized by [petitioner] in its Petition have been accepted as valid, properly pleaded defenses and counterclaims". We have reviewed each of these decisions. Charitably stated, respondent's characterization of their overall favorable nature is overstated. In most cases, motions and cross motions for summary judgment were simply denied on the ground that the respective proponents failed to meet their initial burden (sev-

eral motions were denied without opinion).[3] Only a handful of these cases remotely address the issue of sanctions, each denying the parties' respective applications for same. Notably, in three of these "favorable" cases, the following admonition was given by Supreme Court (Cosgrove, J.): "Unfortunately, the court notes that *it may very well be the case that the defenses and counterclaim asserted by the defendant herein are mere boilerplate having no connection to the actual facts of this case whatsoever.* However, it seems that boilerplate begets boilerplate, and the court cannot make this determination without some evidentiary facts before it upon which to base such a decision * * * *It seems apparent to the court that, although it is a burdensome task for a law firm handling such a large volume of 'collection' cases, each case must be dealt on its own specific facts, in order to determine the legal propriety and merit of the defenses and counterclaims raised therein by the defendant debtor*" (*Citibank v Leahy*, Sup Ct, Erie County, Dec. 21, 1998, Cosgrove, J., slip opn, at 2 [emphasis supplied]; *see also, Citibank v Giomundo*, Sup Ct, Erie County, Dec. 21, 1998, Cosgrove, J.; *Citibank v Ladouceur*, Sup Ct, Erie County, Dec. 16, 1998, Cosgrove, J.). In another case, Supreme Court (Connor, J.) held: "Counsel have an obligation to zealously represent their clients within the bounds of the law and in good faith. While the use of time saving forms may help accomplish this purpose, counsel has an obligation to *make sure that the form fits the specific purpose for which it was intended,* and does not advance specious claims or defenses on behalf of their client" (*Citibank v Snow*, Sup Ct, Columbia County, July 28, 1999, Connor, J., slip opn, at 3-4 [emphasis supplied]). Suffice it to say, even though certain trial courts may have denied the plaintiffs' motions for summary judgment and motions to dismiss respondent's defenses and counterclaims in other consumer collection cases, thereby tacitly recognizing that these defenses and counterclaims may be legally cognizable generally, and even possibly appropriate in the individual cases at issue, these findings do not negate the findings of frivolous conduct by other courts that respondent routinely interposed these defenses and counterclaims without making a good-faith

---

**3.** To the extent that respondent continues to cite *Citibank v Clayton* (Sup Ct, Onondaga County, Mar. 2, 1999, Major, J.) and *Citibank v Gower* (Sup Ct, Oneida County, Mar. 4, 1999, Buckley, J.), as "favorable", we note that in each case Supreme Court granted the plaintiffs' respective motions to reargue and, upon reconsideration, granted summary judgment to the plaintiffs (*see, Citibank v Clayton*, Sup Ct, Onondaga County, Apr. 14, 1999, Major, J; *Citibank v Gower*, Sup Ct, Oneida County, Apr. 26, 1999, Tenney, J.).

inquiry as to their applicability to the individual cases. Just because respondent succeeded in establishing the possible applicability of his "canned" defenses and counterclaims in certain cases does not justify their wholesale use in countless other cases.

With respect to the full and fair opportunity to litigate component of the doctrine, we find that respondent does not seriously dispute that in each of these cases he was on notice that sanctions were being sought based on allegations of frivolous conduct. Furthermore, he has wholly failed to demonstrate that he did not have an opportunity to fully respond, either in writing or through a hearing, to any such application. Nor can it be fairly argued that respondent was unaware that his conduct in these types of cases might indeed subject him to disciplinary action. To this end, we agree that "foreseeability" is an important factor in determining whether to apply collateral estoppel (*see, Gilberg v Barbieri*, 53 NY2d 285, 292; *Schwartz v Public Adm'r of County of Bronx, supra*, at 72; *Samhammer v Home Mut. Ins. Co.*, 120 AD2d 59, 62), and find it wholly present here. In one of the earliest cases in which these counterclaims and defenses were found to have been without merit, respondent was warned in open court by Troy City Court (Farano, J.) that his answers in defense of consumer collection cases were "a sham and frivolous and [without] merit" and that the court was going to report the matter to this Court if he "continue[d] and persist[ed]" in such conduct. With this fair warning in mind, respondent had every incentive to vigorously oppose any finding that he engaged in frivolous conduct by the continued wholesale assertion of these defenses and counterclaims.

To the extent that respondent, as well as an *amicus curiae*, assert that respondent lacked a full and fair opportunity to litigate these cases because the appellate process has yet to run its course, we first point out that in eight of the 17 cases at issue in the petition, *no* notice of appeal was ever filed by respondent, thereby signifying his willingness to be bound by the decisions and findings of these courts (*see, Matter of Amica Mut. Ins. Co. [Jones]*, 85 AD2d 727, 729). Significantly, "the decision not to appeal * * * [does not] translate[ ] into a lack of a full and fair opportunity to litigate" (*Brooks v Green's Appliances*, 259 AD2d 893, 894). We next note that in four of the nine cases in which respondent did file a notice of appeal, he failed to timely perfect the appeal—or to move to extend the time in which to do so—and therefore these appeals are deemed abandoned. Finally, and most notably, in one of the few cases

in which an appeal has been perfected, this Court affirmed the decision to sanction respondent (*see*, *Citibank v Jones*, 272 AD2d 815).

In any event, it is well established that the pendency of an appeal does not affect the use of an order or judgment as an estoppel (*see, e.g.*, *Matter of Beard v Town of Newburgh*, 259 AD2d 613, *lv dismissed* 93 NY2d 958; *Samhammer v Home Mut. Ins. Co.*, *supra*, at 64; *Exchange Natl. Bank v Ferridge Props.*, 112 AD2d 33, 34; *Matter of Amica Mut. Ins. Co. [Jones]*, *supra*; *see also*, *Parkhurst v Berdell*, 110 NY 386, 392-393; 73 NY Jur 2d, Judgments, § 358, at 441-442). Moreover, in *Matter of Yao* (231 AD2d 346, *supra*), this identical issue was raised by the respondent in an attorney disciplinary matter and rejected by the First Department. In doing so, the Court found that, given the nature of the misconduct involved, "it would be improvident for this Court to wait for [the respondent's] appeals to be determined" before entering findings of professional misconduct (*id.*, at 348). So too in this proceeding, given the scope of the misconduct alleged against respondent, we are similarly compelled to address the disciplinary matter forthwith. Accordingly, we find that respondent is collaterally estopped from relitigating each of the respective findings of the Justices and Judges outlined under the charges.

In addressing respondent's claim that it would be inappropriate to find him guilty of professional misconduct merely because he was sanctioned pursuant to 22 NYCRR part 130, it is important to note that we agree with respondent's general contention that an unsuccessful argument is not necessarily a sanctionable argument. We also have no quarrel with another of respondent's general propositions, namely, that the fact that an attorney in this State may be sanctioned or criticized once does not ipso facto constitute a disciplinary rule violation. The issues involved in this proceeding, however, greatly transcend these general propositions. Petitioner is not seeking to discipline respondent for one unsuccessful argument or for one isolated instance of being sanctioned. Rather, petitioner seeks to discipline respondent for his *repeated sanctionable* conduct of asserting defenses and counterclaims as a regular practice and declining to make a good-faith inquiry into their applicability to any given case as part of an intentional strategy to delay litigation and to harass his opponents in order to extract settlements, all despite express warnings from scores of Justices and Judges throughout this State to discontinue these practices.

To this end, it is not seriously disputed by respondent that the lack of a legal and/or factual basis for his defenses and

counterclaims in these consumer collection cases was brought to his attention on numerous occasions. Notwithstanding, he continued to assert them time and time again, even in cases before the same Justice or Judge who had previously found them to be without merit. Nor does respondent necessarily deny that he asserts such defenses and/or counterclaims without fully investigating if a factual basis exists to warrant same. He justifies this conduct on an "economic realities of litigation" theory. Specifically, he postulates that a litigant of "modest means", such as a debtor in a collection case, cannot afford to have his or her attorney spend "hours" researching and drafting pleadings while a corporate client can afford to have its attorney "spend weeks" researching and drafting pleadings.

The fact that an attorney voluntarily chooses to represent someone of "modest means" does not lessen his or her professional obligations as an attorney, obligations which extend not only to the client but to the court system as well. To countenance such lawyering as "creative" advocacy would wreak havoc on the already burgeoning workload of the judicial system, a system which relies on the professional conduct of attorneys in order to efficiently resolve legitimate legal disputes. Nor is this a case where application of collateral estoppel might offend the principle of "open access to all levels of the judicial system" (*Talamini v Allstate Ins. Co.*, 470 US 1067, 1071 [Stevens, J., concurring]) and/or deter the voices of assertive and novel advocacy. No court should "tolerate gross abuses of the judicial process" (*id.*, at 1071) and, "while freedom of access to the courts is indeed a cherished value, every misuse of any court's time impinges on the right of other litigants with valid or at least arguable claims to gain access to the judicial process" (*id.*, at 1073-1074 [Burger, Ch. J., concurring]).

Given respondent's repeated, frivolous and sanctionable conduct and its resulting deleterious effect on the judicial system, we find that petitioner has established that he engaged in conduct prejudicial to the administration of justice (DR 1-102 [a] [5]), engaged in conduct that adversely reflects on his fitness to practice law (DR 1-102 [a] [7]), asserted positions, conducted defenses and took other action on behalf of clients when he knew, or when it was obvious, that such action would serve merely to harass another (DR 7-102 [a] [1]), and that he knowingly advanced a claim or defense that was unwarranted under existing law which could not be supported by a good-faith argument for an extension, modification or reversal of

existing law (DR 7-102 [a] [2]) (*see, Matter of Babigian*, 247 AD2d 817, *supra*; *Matter of Morrissey*, 217 AD2d 74, *supra*).[4] Moreover, given the findings that respondent filed false and/or misleading papers, we find that the petition also establishes conduct involving dishonesty, fraud, deceit or misrepresentation (DR 1-102 [a] [4]) (*cf., Matter of Ryan*, 189 AD2d 96, *supra*).

We are compelled, as a final matter, to address one remaining contention, namely, that this proceeding "boils down" to an attorney being subjected to "*automatic* discipline as a consequence of any civil sanctions imposed against him [or her]." In applying collateral estoppel in this proceeding and thus precluding respondent from relitigating the fact that he engaged in specific conduct for which he was sanctioned, admonished and/or assessed costs and fees, this Court is by no means delegating its power to discipline any attorney, including respondent, to trial level Justices and Judges in this State who might sanction an attorney. "While fact-finding is a necessary part of disciplinary proceedings, the primary aspect of the disciplinary process is determining whether certain conduct falls below the minimum standard required of attorneys * * * and the sanction thereby warranted" (Brickman and Bibona, *Collateral Estoppel as a Basis for Attorney Discipline: The Next Step*, 5 Geo J Legal Ethics 1, 11). Manifestly, it was the sole province of this Court to determine whether respondent has violated any of the charged disciplinary rules. Here, we find that respondent has repeatedly overstepped the bounds of ardent representation and is indeed guilty of violating each of the charged disciplinary rules under charges I through III.

Respondent's remaining arguments, to the extent not addressed, have been reviewed and rejected.

Mercure, J. P., Crew III, Peters, Carpinello and Graffeo, JJ., concur. Ordered that petitioner's motion is granted, to the extent set forth in the above decision; and it is further Ordered that respondent may be heard in mitigation or otherwise before this Court at a time to be fixed by the clerk of the Court.

---

4. We reach a contrary result, however, with respect to respondent's isolated instance of frivolous conduct in Federal court; thus, charge IV has not been sustained and will be dismissed.