In the Matter of the STATE OF NEW YORK, Appellant-Respondent, v STRONG OIL COMPANY, Respondent-Appellant.

Second Department, June 14, 1982

### APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Melvyn R. Leventhal, Paulann Caplovits, Ronald Glickman* and *Reed K. Brody* of counsel), for appellant-respondent.

*Keith J. Roland,* for respondent-appellant.

### OPINION OF THE COURT

THOMPSON, J.

In 1973 the Congress of the United States enacted the Emergency Petroleum Allocation Act of 1973 (the EPAA) (US Code, tit 15, § 751 *et seq.*), which established Federal price control authority over certain oil products. By its own

terms, the EPAA was set to expire at the end of September, 1981. An amendment to the act authorized the President to exempt petroleum products from fuel controls and to convert such controls from mandatory to standby status. (US Code, tit 15, § 760a.)

In November, 1979 the New York State Legislature enacted legislation to discourage "price gouging" by merchants selling oil to be used for home heating (heating oil). (General Business Law, § 396-r.) The Legislature intended to impose civil penalties upon merchants charging "grossly [or unconscionably] excessive prices for essential consumer goods and services" during periods of "abnormal disruption of the market". (General Business Law, § 396-r, subd 1.) The Legislature declared that such an "abnormal disruption" had developed as to heating oil for the 1979-1980 heating season. Unconscionably excessive prices are prices which exhibit a gross disparity in the price charged as compared to the price during normal business prior to the onslaught of the disruptions. Prices reflecting higher costs faced by sellers would not constitute gouging. Whether a price is unconscionably excessive is a question of law for the court. (General Business Law, § 396-r.) Pursuant to subdivision 12 of section 63 of the Executive Law, the Attorney-General attempted to enforce section 396-r of the General Business Law against the Strong Oil Company (Strong). Executive Law provisions permit the Attorney-General to seek an injunction and restitution for aggrieved consumers. Section 396-r of the General Business Law permits him to seek a civil penalty (when appropriate) not to exceed $5,000.

In 1980 a consumer from Southampton complained to the Attorney-General about Strong's price of $1.009 per gallon charged for a delivery made January 23, 1980. On the basis of the consumer complaint, the Attorney-General began the instant proceeding in the Supreme Court, Suffolk County, in March, 1980, alleging, *inter alia,* that Strong's price "grossly exceed[ed]" prevailing prices and was "unconscionably excessive" under section 396-r of the General Business Law. In response, Strong alleged, *inter alia,* that section 396-r had been pre-empted by Federal law and that the statute violated the due process clauses of

the Federal and New York Constitutions. Both sides submitted affidavits.

An Assistant Attorney-General had investigated heating oil prices on Long Island for January, 1980. He said that on January 9 and 10, 1980 the prices ranged from 87.9 cents to 96.9 cents per gallon with an average price of 92.3 cents. He also alleged that from February 20 to 21, 1980 heating oil prices ranged from 95.9 cents to 99.1 cents with an average of 97.3 cents. The State Energy Office, based on selective surveys of 16 dealers in Suffolk County and 26 dealers in Nassau County, showed an average price of about 94 cents per gallon and a high of 96.9 cents. (See *Matter of State of New York v Strong Oil Co.,* 105 Misc 2d 803, 806.) It was also claimed that Strong had charged $1.009 per gallon on or before January 23, 1980, making its price the highest in the State.

Strong submitted a number of affidavits concerning its business and the heating oil business in general. Strong said that it had identified the consumer who had made the complaint, had explained the company's bill to her, had received full payment for the oil delivered and that she had remained a customer even though other companies were available to service her.

Special Term, noting that the affidavits raised disputes of fact not readily resolved on a motion, concluded that these disputes were rendered academic by its resolution of the legal questions raised. Special Term also cautioned that its decision "relate[d] only to home heating oil", not to any other consumer product or service. (*Matter of State of New York v Strong Oil Co.,* 105 Misc 2d 803, 806, *supra.*) It held that section 396-r of the General Business Law had been pre-empted by the EPAA and was in conflict with Federal statute and regulations, and that section 396-r is unconstitutionally vague. We affirm Special Term on the pre-emption and conflict grounds. We do not decide the question of vagueness. We also note that the instant decision is limited to heating oil at the time the instant proceeding arose.

The United States Supreme Court has established a two-prong test to determine whether a State law or regulation has been pre-empted. The first prong is whether Congress

has prohibited State regulation in the particular field in question. (*Jones v Rath Packing Co.,* 430 US 519.) This occurs when Congress has chosen to "occupy the field to the exclusion of the States". (*Malone v White Motor Corp.,* 435 US 497, 504.) Congress may evidence its intent to occupy a field by an explicit statement in a statute, or the "structure and purpose" of the statute may imply that intent. (*Jones v Rath Packing Co., supra,* p 525.)

Special Term examined the broad and pervasive character of the EPAA, noting in particular the amendments which authorized the President to exempt certain petroleum products from price and allocation controls and to convert such controls from mandatory to standby status, provided that certain procedures were followed (US Code, tit 15, § 760a). The President would have to determine that amending the controls would be consistent, "to the maximum extent practicable", with attaining "the objectives" specified in the statute (US Code, tit 15, § 760a, subd [b]). The President could also request Congress to exempt specific products from the regulatory scheme. By regulation, residential fuel oil, No. 2 heating oil, No. 1 heating oil, No. 2-D diesel fuel and No. 1-D diesel fuel and kerosene were exempted from Federal price controls, in effect making those controls standby as to these products. (41 Fed Reg 13896, 24518, 30096 and 30098.) Each regulation was made upon a finding that competition and normal market forces would suffice to protect consumers. Senate and House reports commented that the moves were part of a gradual process to reach an "unregulated market". (See Senate Conf Rep No. 94-516 and House of Representatives Rep No. 94-340, US Code Cong & Admin News, 1975, vol 2, pp 2045, 1819.) The House was particularly explicit in its expression of an intent to reach a free market in the area.

Special Term further concluded that Congress, by occupying the field and specifically exempting heating oil, had left no room for State regulation. We agree and hold that the Federal statute and rules have pre-empted State regulation. The State law must therefore fall under the supremacy clause of the Constitution (art VI, § 2). Section 396-r of the General Business Law, as applied in the instant case, is in direct conflict with the then existing Federal regulatory scheme for heating oils.

In reaching its conclusion, Special Term relied heavily on *Mobil Oil Corp. v Tully* (499 F Supp 888 [NDNY, 1980], affd 653 F2d 497 [Temporary Emergency Ct of Apps, 1981]). In that case, some 10 major oil companies had challenged a New York taxing statute which had imposed a 2% tax on the gross receipts the oil companies derived from their activities within this State. The statute prohibited the oil companies from passing the tax along to their customers. It also provided for its "self-destruction" if the antipassthrough provision was found invalid upon judicial review. The District Court agreed with the oil companies that the EPAA with its consequent Federal price control authority pre-empted State authority. On appeal the Court of Appeals for the Second Circuit held that the matter should be heard by the Temporary Emergency Court of Appeals (TECA) (*Mobil Oil Corp. v Tully*, 639 F2d 912, cert den *sub nom. Tully v New England Petroleum Corp.*, 452 US 967). That court then affirmed the District Court, but noted that the expiration of the Federal scheme in September, 1981 would "signal the end of federal concern in this area". (653 F2d, at p 502.)

The United States Supreme Court has since reviewed the decision of TECA. (*Tully v Mobil Oil Corp.*, __ US __, *supra*.) The Supreme Court stated (p __) that "[t]he normal rule in a civil case is that we judge it in accordance with the law as it exists at the time of our decision. *Kremens* v. *Bartley*, 431 U.S. 119, 129 (1977); *Fusari* v. *Steinberg*, 419 U.S. 379, 387 (1975)." Noting that the Federal statutory scheme had already expired, the eight-member majority stated (p __) that "[o]rdinarily, the determination that the law has so changed as to eliminate a conflict between federal and state law would conclude the dispute." However, since the parties contended that a controversy still existed as to the period prior to October 1, 1981, and because they had raised certain other matters, the Supreme Court vacated the judgment and injunction and remanded the case to TECA for reconsideration in light of the expiration of the Federal regulatory program. The majority did not in fact resolve the pre-emption question for the pre-expiration period.

Justice STEVENS, the sole dissenter, agreed with TECA that the "Federal price control authority under the Emer-

gency Petroleum Allocation Act, 15 U.S.C. § 751 *et seq.,* preempted the authority of the State of New York to control prices of petroleum products." (*Tully v Mobil Oil Corp., supra,* p __.) He concluded that the effect of New York's antipassthrough tax scheme after the expiration of the Federal statute was not properly before the court, and would simply have affirmed the judgment of TECA.

We have considered carefully the Supreme Court's decision in *Tully.* It does not alter our conclusion with regard to section 396-r of the General Business Law as applied prior to the termination of the Federal statutory program. During that time there was a valid and pervasive Federal program in effect with respect to the market and prices of heating oil. New York's regulation was both pre-empted by and in conflict with that scheme and thus was unconstitutional at the time on the facts of the instant proceeding. Unlike the Supreme Court, we are not faced with any question about State regulation after the end of the Federal program.

Moreover, because Strong faced fines and other sanctions, the application of the New York statute to it had a penal effect, and we must be governed by the law at the time the underlying events occurred in the absence of subsequent ameliorative developments. We cannot, because of the penalties involved, resolve this case by a declaration that Federal pre-emption ceased when the Federal program ended.

Since Special Term resolved the pre-emption issue in favor of Strong, it was unnecessary to reach the issue of vagueness. We neither pass upon that issue nor give our approval to the conclusions reached by Special Term.

DAMIANI, J. P., NIEHOFF and BOYERS, JJ., concur.

Appeal by Strong Oil Company from a decision of the Supreme Court, Suffolk County, dated October 23, 1980, dismissed, without costs or disbursements. No appeal lies from a decision.

Appeal and cross appeal from an order of the same court dated November 12, 1980, dismissed, without costs or disbursements (see *Matter of Aho,* 39 NY2d 241, 248).

Cross appeal from a judgment of the same court dated December 1, 1980, dismissed, without costs or disbursements. Strong Oil Company was not aggrieved by the judgment.

Upon appeal by petitioner, judgment of the same court dated December 1, 1980, affirmed, without costs or disbursements.