OPINION OF THE COURT
John A. Lahtinen, J.
This is a special proceeding brought by the Attorney-General of the State of New York against respondent Chazy Hardware, Inc., pursuant to Executive Law § 63 (12) and General Business Law § 396-r (entitled “Price gouging”). Petitioner seeks injunctive relief, an accounting, restitution to all entitled consumers, a civil penalty and costs.
The proceeding was commenced by petition and an order to show cause signed by this court on January 20, 1998 which, inter alia, temporarily restrained respondent from selling any consumer goods or service for an amount which represents an unconscionably excessive price during periods of abnormal disruption of the market for such goods in this State.
Respondent answered the petition and has moved to dismiss same. Respondent has also moved by order to show cause signed by this court on February 11, 1998 for discovery and inspection of certain documents and policies of petitioner.
Respondent operates a hardware store in the Village of Chazy, Clinton County, New York. In early January 1998 Clinton County was subjected to a severe ice storm which left thousands of homes and businesses without electrical power. The power outages persisted for several days in most areas of the County. Prior to the ice storm respondent had on hand one electric power generator which had been in stock since October 1, 1996.
On January 9, 1998, during the ice storm, in an effort to help a number of its customers obtain a source of electrical power, respondent secured the purchase of 54 Homelite electric generators from a supplier in Burlington, Vermont. Respondent purchased these generators at a price of $533 each for the LR 4400 model (34 units) and $656 each for the LR 5400 unit (20 units). It only sold 50 of these units, retaining the others. *962 On Saturday, January 10,1998, respondent took orders for the generators, charging $780 for the 4400 model and $890 for the 5400 model. Respondent established these prices by adding its customary average margin of 28% profit to the cost of the generators.
Respondent sent one of its trucks to Vermont to pick up the generators on Sunday, January 11, 1998, and opened its business to distribute those generators that had been ordered the previous day.
On Sunday, January 11,1998, respondent increased the price of the 14 uncommitted 4400 model generators and the one remaining 5400 model to $1,190. Respondent claims without the increase it could not recoup its additional costs for opening on a Sunday (a day it is normally closed), servicing the generators and picking up the generators. It is the Sunday price increase which triggered this proceeding, and restitution is sought by petitioner only for those consumers who purchased the generators at the $1,190 price.
The “price gouging” statute, General Business Law § 396-r, reads in pertinent part as follows:
“§ 396-r. Price Gouging * * *
“2. During any abnormal disruption of the market for consumer goods and services vital and necessary for the health, safety and welfare of consumers, resulting from stress of weather, convulsion of nature, failure or shortage of electric power or other source of energy, strike, civil disorder, war, national or local emergency, or other cause, no merchant shall sell or offer to sell any such consumer goods or services for an amount which represents an unconscionably excessive price. For the purposes of this section, the term consumer goods and services shall mean those used, bought or rendered primarily for personal, family or household purposes; provided, however, that with respect to home heating oil the term merchant shall include any supplier, wholesaler, distributor or retail seller of home heating oil, and the term consumer goods and services shall include home heating oil sold by one merchant to another when the product sold was located in the state prior to the sale. Consumer goods and services shall also include any repairs made by a merchant on an emergency basis as a result of such abnormal disruption of the market.
“3. Whether a price is unconscionably excessive is a question of law for the court. Evidence that (a) the amount charged represents a gross disparity between the price of the goods or *963 services which were the subject of the transaction and their value measured by the price at which such consumer goods or services were sold or offered for sale by the merchant in the usual course of business immediately prior to the onset of the abnormal disruption of the market or (b) the amount charged grossly exceeded the price at which the same or similar goods or services were readily obtainable by other consumers in the trade area, and, in addition, that (c) the amount charged by the merchant was not attributable to additional costs imposed by its suppliers, shall constitute prima facie proof of a violation of this section in any proceeding commenced by the attorney general pursuant to subdivision four hereof.”
Petitioner contends respondent raised the price of its electric generators on Sunday, January 11, 1998, to an unconscionably excessive price, thus violating this statute.
There is little argument that the January ice storm created an abnormal disruption in the market for consumer goods and services or that electric generators fall within the scope of such goods vital and necessary for the health, safety and welfare of consumers (see, People v Two Wheel Corp., 71 NY2d 693). Nevertheless, respondent raises several arguments regarding, the applicability of the terms of General Business Law § 396-r to its hardware business and its actions regarding sales of electric generators.
Respondent argues it is not a “merchant” within the meaning of the statute because it was not in the business of selling electric generators prior to January 10, 1998. By respondent’s admission it had at least one generator for sale in its inventory prior to the ice storm. Notwithstanding the fact that the generator had remained unsold for 15 months, there is no proof this unit was for respondent’s own use. Uniform Commercial Code § 2-104 (1) defines a “merchant” as “a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge * * * peculiar to the * * * goods involved in the transaction”. The court finds that respondent is a merchant selling consumer goods as contemplated by General Business Law § 396-r (2).
Respondent next claims that it did not have a price for generators “immediately prior to the onset of the abnormal disruption” and cannot be considered a merchant in the usual course of business (of selling generators) and, consequently, subject to the provisions of General Business Law § 396-r (3) (a). The challenged sales are those made on or after January 11, 1998 which increased the price set by respondent during *964 the abnormal disruption. Respondent claims that its initial generator price was set by adding its customary average margin of 28% profit. Accordingly, the court finds respondent’s method of establishing a retail price for its merchandise was established prior to the onset of the abnormal disruption and its price increase challenged herein falls within the provisions of the statute.
Respondent also claims that the generators were not “readily obtainable” by consumers in the trade area and it cannot be held to have violated General Business Law § 396-r (3) (b) as a result of its generator sales. Petitioner has set forth evidentiary proof in admissible form, consisting of affidavits from persons employed by other businesses selling electric generators in Clinton County during the ice storm demonstrating to the contrary. These affidavits also undercut respondent’s argument that its price increase from Saturday to Sunday was justified, in part, because it was providing service for the generators it sold. These other merchants (save one) selling electric generators during this period provided the same “start-up” and repair services respondent claims to have provided.
In determining the unconscionability of respondent’s Sunday price increase as a matter of law (General Business Law § 396-r [3]) the court finds respondent’s Sunday price for the same generators, purchased at the same cost as those presold on the previous day, was grossly disparate from the Saturday prices and not justifiable under the statute.
Respondent paid $533 per LR 4400 unit and $656 per LR 5400 unit. Adding respondent’s usual markup of 28% to each unit establishes their prices at $683 and $840, respectively. Respondent also claimed total extraordinary costs of $5,065 or $93.80 ($5,065 -r- 54) per unit. Adding $93.80 to the price of each unit raises the prices to $777 and $934, respectively. Accepting respondent’s figures at face value, its initial pricing of the LR 4400 unit and LR 5400 unit ($780 and $890, respectively) would have produced markups of approximately 26% and 19% over and above all costs claimed by respondent. By raising the prices to $1,190, the markup rises to approximately 93% and 59%, respectively. The original prices established by respondent, when coupled with its claimed extraordinary costs (none of which were attributable to its supplier), result in a slightly lower markup than was customary for them. The subsequent price increase, however, violates the statute as it is, in the opinion of this court, unconscionably excessive. (See, People v Two Wheel Corp., 71 NY2d 693, supra; Matter of State *965 of New York v Strong Oil Co., 105 Misc 2d 803, affd 87 AD2d 374.)
Respondent also asserts affirmative defenses challenging General Business Law § 396-r as void for vagueness and unconstitutional. There is a strong presumption of validity attached to statutes and legislative enactments which are deemed constitutional until their invalidity has been proven beyond a reasonable doubt by the party challenging the statute (Matter of State of New York v Strong, 105 Misc 2d 803, 819 [Sup Ct, Suffolk County 1980], affd 87 AD2d 374 [2d Dept], supra, citing McKinney’s Cons Laws of NY, Book 1, Statutes § 150 [b]). This court does not find the statute imposes such an amorphous standard that a merchant would be unable to conduct itself in accordance with the terms contained therein.
Respondent also argues it has been the target of selective enforcement of the statute by the Attorney-General who acted in bad faith to injure respondent’s reputation. Respondent has failed to establish the requirements of this defense as set forth in LeClair v Saunders (627 F2d 606 [2d Cir], cert denied 450 US 959), the case cited in its memorandum. There is no proof that enforcement of General Business Law § 396-r against respondent is based upon any of the “impermissible considerations” recited in LeClair.
The injunctive relief sought by the People in their petition is granted. Respondent is enjoined from selling or offering to sell electric generators for an amount which represents an unconscionably excessive price during any abnormal disruption of the market for such generators.
Petitioner also seeks restitution for the 15 consumers who purchased generators at the increased price on Sunday, January 11, 1998 (General Business Law § 396-r [4]). This restitution shall be granted to the extent that those consumers shall be refunded the difference between the price of the generators sold by respondent on Saturday and those sold on Sunday for the same model generator they purchased. Counsel for petitioner shall prepare an order for the court’s signature in this regard.
Petitioner also seeks costs (CPLR 8303 [a] [6]) and a civil penalty from respondent, the latter authorized by General Business Law § 396-r. It is commendable that respondent attempted to respond to an emergency crisis by locating, securing and distributing electric generators to its long-time customers and other local purchasers. In providing these electric generators, respondent was not required to sustain a loss. *966 Indeed, the Court of Appeals has said that “[not] all price increases are prohibited during periods of abnormal market disruptions” (People v Two Wheel Corp., 71 NY2d 693, 700, supra). In working to secure these generators under the trying circumstances that existed during the ice storm and at the same time arrive at a fair and equitable price, respondent obviously miscalculated its additional costs and as a result ran afoul of General Business Law § 396-r requiring the court to find a violation of this statute. Respondent has submitted affidavits attesting to its reputation as a long-standing, respected member of the North Country business community. Consequently, this court will impose a civil penalty, which the statute directs a court “shall” impose for a violation of General Business Law § 396-r (see, General Business Law § 396-r [4]) in the total amount of $1,500. That portion of petitioner’s application seeking costs, which is left to the discretion of the court (CPLR 8303 [a] [6]), is denied.
Respondent’s motion for discovery and inspection has been rendered moot by this court’s decision on the merits of the petition and is denied.