OPINION OF THE COURT
Bruce M. Balter, J.
*990 This opinion discusses (1) plaintiffs motion for summary-judgment; (2) the frivolous nature of the defendant’s opposition to the plaintiffs claim and to said motion; and (3) the appropriate monetary award of costs to the plaintiff and sanctions against the defendant’s attorneys, Andrew F. Capoccia, L. L. C., and Michael Scaptura, Esq., an associate of that firm, for engaging in frivolous conduct before this court.
FACTS AND PROCEDURAL BACKGROUND
In or about July 1996 the defendant, John L. McGowan, entered into a loan agreement with the plaintiff, Providian National Bank, through its predecessor, First Deposit National Bank (hereinafter referred to as Providian). During September 1997, the defendant borrowed $14,000 pursuant to the agreement. Since then, with the exception of a single $300 payment, the defendant has failed to make payments towards this debt.
Plaintiff commenced this action to recover the amount due under the agreement, $15,045.70 with interest from April 4, 1998 plus attorneys’ fees in the amount of $3,009.14. Plaintiffs counsel made a routine motion for summary judgment pursuant to CPLR 3212. Defendant opposed the motion, not by challenging plaintiffs view of the facts, but by alleging that the plaintiff violated a number of statutes and general principals of law. Plaintiff submitted a reply affirmation alleging that the defendant’s affirmative defenses and counterclaims are frivolous, and requesting that the court levy sanctions against the defendant’s attorneys.
After reviewing all the documents submitted with the motion, the court decided that a sanction hearing was warranted. On November 16, 1998, notices were sent to both sides stating that the court would consider awarding costs and imposing sanctions. The parties were given until December 30, 1998 to submit additional affidavits and memoranda of law, and a hearing was scheduled for January 19, 1999.
No additional papers were submitted to the court. On the sanction hearing date, the defendant’s attorneys, the Law Offices of Andrew F. Capoccia, L. L. C., were represented by Ona Erikes, Esq. Ms. Erikes stated that she was an associate with Mr. Capoccia’s law firm, hired three months earlier to work in the firm’s bankruptcy department located in Jericho, New York. She claimed to be unfamiliar with her firm’s “debt reduction” practice, and that she had never been introduced to Michael Scaptura, Esq., the attorney who signed the defendant’s opposition papers. Mr. Scaptura, Esq. works in the firm’s Albany, *991 New York office, approximately a four-hour drive from Jericho, New York.
Mr. Scaptura apparently could not attend this court’s hearing because he was engaged in another proceeding. Ms. Erikes could not give the court any details regarding Mr. Scaptura’s scheduling conflict, and Mr. Scaptura did not submit an affirmation of actual engagement to the court.
All that Ms. Erikes came prepared to do was apologize for her employer’s tactics and assure the court that the firm would never engage in these practices again. Under the circumstances, within the limited scope of what her employer expected of her, Ms. Erikes did her job well. Nevertheless, her presence could not compensate for the firm’s failure to send a more experienced partner or associate to make this appearance.
plaintiff’s motion for summary judgment
The plaintiff has shown by the submission of affidavits and other documentary evidence a prima facie entitlement to summary judgment. (Zuckerman v City of New York, 49 NY2d 557 [1980].) The burden now shifts to the defendant to tender evidence that there is a triable issue of fact. (GTF Mktg. v Colonial Aluminum Sales, 66 NY2d 965 [1985]; McCormack v Graphic Mach. Servs., 139 AD2d 631 [2d Dept 1988].) In considering the defendant’s opposition, the court is obligated to accept all statements made by the defendant as true. (Creighton v Milbauer, 191 AD2d 162 [1st Dept 1993].)
Defendant does not raise any material issues of fact. He does not deny that he entered into an agreement with the plaintiff, nor does he challenge the plaintiff’s contention that he owes the plaintiff the amount claimed in the complaint. Instead he raises three affirmative defenses and two counterclaims.
Defendant’s first affirmative defense states that the plaintiff’s complaint fails to state a cause of action. Pleadings must be liberally construed, and a complaint will not be dismissed when a cause of action may be discerned. (Gorman v Gorman, 88 AD2d 677 [3d Dept 1982].) Plaintiff’s complaint states the simplest of claims: breach of a loan agreement due to nonpayment. It is drafted so concisely that defendant makes no attempt to support this affirmative defense in his opposition to the motion. Furthermore, the Appellate Division, Second Department, has held that the defense that a complaint does not state a cause of action cannot be interposed in an answer. The sufficiency of a complaint may only be tested by a motion to dismiss pursuant to CPLR 3211 (a) (7). (Guglielmo v Roos *992 evelt Hosp. Staff Hous., Co., 222 AD2d 403 [2d Dept 1995].) Therefore, defendant’s first affirmative defense is without merit.
Defendant’s second affirmative defense alleges that the agreement at issue is unenforceable because it is unconscionable and against public policy. The doctrine of unconscionability contains both procedural and substantive aspects, and whether a contract or clause is unconscionable is to be decided by a court against the background of the contract’s commercial setting, purpose and effect. (Sablosky v Gordon Co., 73 NY2d 133, 138 [1989].)
A claim of procedural unconscionability is judged by whether the party seeking to enforce the contract used high pressure tactics or deceptive language, and whether there was inequality of bargaining power between the parties. (Gillman v Chase Manhattan Bank, 73 NY2d 1 [1988].) Whether or not the plaintiff used high pressure tactics to force the defendant into this agreement is not at issue. Neither party found it necessary to describe the setting in which the agreement was consummated. Defendant’s affidavit also does not support a claim that the contract used deceptive language or that there was inequality of bargaining power. Defendant merely states that he did not understand certain terms of the contract. He does not explain why these terms are deceptive, and he offers the court no explanation as to how the true meaning of these terms contributed to his default. Nor does the defendant argue that there was inequality of bargaining power between the parties. Unsolicited offers of credit are numerous in our society. It is unlikely that the defendant had no other choice but to enter into a credit agreement with the plaintiff.
The test for substantive unconscionability is whether one or more of the key terms of the contract is unreasonably favorable to one party. (People v Two Wheel Corp., 71 NY2d 693, 699 [1988].) Although there is no general test for the unreasonableness of a contract, the Court of Appeals has stated that “[a]n unconscionable contract * * * [is] one which ‘is so grossly unreasonable or unconscionable in light of the mores and business practices of the time and place as to be unenforceable according to its literal terms.’ ” (Gillman v Chase Manhattan Bank, 73 NY2d, supra, at 10, quoting Mandel v Liebman, 303 NY 88, 94.) Measured by this standard, a simple loan with an interest rate not barred by the Legislature, which the defendant breached by failing to make monthly payments without any explanation whatsoever, is not unreasonable as a matter *993 of law. Accordingly, defendant’s second affirmative defense is without merit.
Defendant’s third affirmative defense claims that the plaintiff “failed to comply with the requirements set forth in the New York Personal Property Law, Article 10 Sections 402 and 413.” Defendant’s attorney does not state how the agreement failed to comply with this statute; he leaves that task to the defendant himself. Defendant states that to the “best of my recollection, I do not believe a representative of the plaintiff signed the agreement.”
Personal Property Law §§ 402 and 413 apply to retail instalment contracts. In contrast, in this case the agreement between the parties was a simple arrangement by which the plaintiff agreed to extend credit to the defendant in exchange for the defendant’s repayment of the principal of the loan plus interest. No evidence has been submitted that plaintiff sold goods or services to the defendant. Moreover, the agreement at issue does not even contemplate the issuance of a credit card to the defendant. Instead it is a personal loan which makes provisions for the defendant to write the equivalent of personal checks against the credit extended by the plaintiff. The agreement’s sole restriction is that the defendant can use the funds for personal use only.
Even if these provisions of the Personal Property Law did apply, the defendant does not present a question of fact that the plaintiff violated the laws. Personal Property Law §§ 402 and 413 require that a financing agency send the retail buyer a fully executed copy of a credit agreement. Since the defendant was sent the agreement, and logic has it that the defendant must have received the agreement to comment on his inability to understand it, defendant’s uncertainty about the presence on the agreement of a signature of plaintiff’s representative does not create a question of fact, and is irrelevant to this court’s consideration of this motion. Therefore, defendant’s third affirmative defense is without merit.
Defendant’s first counterclaim contends that the plaintiff “failed to comply with the requirements set forth in the Federal Truth in Lending Act, U.S. Title Code, Title 15, Section 1601(a) et seq.” The court need not consider the merits of this claim. A private right of action under this Federal law must be brought “within one year from the date of the occurrence of the violation.” (15 USC § 1640 [e].) Any violation that may have occurred took place when the defendant first signed the credit agreement, over two years before defendant answered the *994 plaintiff’s complaint. (See, In re Smith, 737 F2d 1549 [11th Cir 1984].) In any event, the defendant has offered no specific allegations to support this claim. Therefore, defendant’s first counterclaim is completely without merit.
Defendant’s second counterclaim contends that the plaintiff failed to comply with General Obligations Law § 5-702 in that the loan agreement was not written in a clear and coherent manner using words with common and everyday meaning. This statute, entitled “Requirements for use of plain language in consumer transactions”, demands that consumer contracts be written in a clear and coherent manner using words with common everyday meaning; and be appropriately divided and captioned by its various sections. A party suing individually under this section may recover actual damages plus a $50 penalty. (General Obligations Law § 5-702 [a].) However, a violation of this provision does not render an agreement void or voidable and it does not constitute a defense to an action for breach of such agreement. (General Obligations Law § 5-702 [b].)
Perhaps in light of these limitations, but more likely by chance, the defendant’s attorney pleads this “plain language” statute as a counterclaim. Defendant, in his affidavit in opposition, elaborated on this claim by stating that he required assistance understanding such terms as “severability”, “standard of care”, and “average daily balance”. It appears that the defendant would like the court to assume that if the defendant had understood these terms, he would not have entered into the agreement and would not have borrowed $14,000 from the plaintiff.
As with all the claims made by the defendant, this argument is without merit. The terms that the defendant claims to have misunderstood have nothing to do with the core provisions of the agreement. Unless the defendant can reasonably explain to the court that he misinterpreted the agreement to mean that the plaintiff was giving him a gift, this claim is patently ridiculous and a useless fantasy pleaded only to delay the outcome of this case.
Since the defendant has not alleged or proven that he suffered actual damages due to the purportedly incomprehensible agreement, the only possible award this court could make to the defendant on the counterclaim is the $50 penalty. However, the court cannot even consider the imposition of this penalty because the allegations in defendant’s affidavit are conclusory and simply repeat the allegations in the defendant’s answer. *995 (See, Gluck v Pinkerton N. Y. Racing Sec. Serv., 96 AD2d 548 [2d Dept 1983].) The document at issue, in this court’s opinion, is a clear and concise loan agreement. Accordingly, defendant’s second counterclaim has no merit in law or in fact.
In conclusion, plaintiff has presented a prima facie case for summary judgment. In response, the defendant has not disputed plaintiffs view of the facts. Instead he has merely challenged the plaintiffs claim with worthless defenses and counterclaims. On the record presented, there is no question of law or issue of fact as to plaintiffs claim.
FRIVOLOUS CONDUCT
The Civil Court exists to resolve legitimate disputes. It was not established to assist debtors and their attorneys in their efforts to bully creditors into altering the terms of loan agreements. Frivolous opposition to legitimate claims delays their resolution and clogs this court’s calendar. The opposition to this motion and the defendant’s attorneys’ “debt reduction” tactics on behalf of their clients across New York State are, in this court’s opinion, an extreme example of the frivolous, conduct which is plaguing our legal system.
The Rules of the Chief Administrator of the Courts give this court the authority to award costs and impose sanctions for frivolous conduct. (22 NYCRR 130-1.1 et seq.) Conduct is considered frivolous if it is completely without merit in law and cannot be supported by a reasonable argument for the extension, modification or reversal of existing law. (22 NYCRR 130-1.1 [c].) In deciding whether conduct is frivolous the court must consider the circumstances under which the conduct took place, including the time available for investigating the legal and factual basis of the conduct, and whether or not the conduct was continued when its lack of legal and factual basis became apparent, should have become apparent, or was brought to the attention of the counsel in question. (See, 22 NYCRR 130-1.1 [c].)
In the instant case, as illustrated by the above analysis, defendant’s attorneys attempted to shoehorn laws and legal concepts to a set of facts where they have no application. The defendant’s attorney puts forth defenses and counterclaims that ignore the simplicity of the plaintiffs claim, disregard the plain meaning of the statutes on which they are based, and offer conclusory allegations where a complex analysis of the facts is required. In short, the arguments are completely without merit in law. Furthermore, no arguments are made for the *996 extension, modification, or reversal of any law, and this court cannot think of any arguments to make on the counsel’s behalf.
The circumstances under which these arguments were made only add to their frivolous nature. According to an advertisement submitted to the court, the Law Offices of Andrew F. Capoccia, L. L. C. are “debt reduction professionals”. Mr. Capoccia is quoted as saying, “we will reduce your debt, or you will get back every penny of your entire fee * * * you won’t even have to ask!” To better comprehend the frivolous nature of the firm’s conduct, one must contrast the claims of the law firm’s advertisement with the final product submitted to the court.
The defendant’s affidavit in opposition states that his counsel advised him that since the plaintiff had not followed the law, this case should proceed to trial. However, none of the alleged factual issues presented by the defendant are genuine. A law firm with the skills claimed by the defendant’s attorneys should have been able to explain to their client that he did not have a defense to the plaintiffs claim or a counterclaim against the plaintiff. Then the plaintiff could have been referred to the firm’s bankruptcy department.
Mr. Capoccia’s law firm also had adequate opportunity to investigate the legal and factual basis for defendant’s claim. A law office with the expertise claimed by Mr. Capoccia should be able to determine the legitimacy of a client’s defenses or counterclaims after a short interview. Likewise, any argument that the firm lacked the time to prepare opposition to this motion would be implausible. This motion was returnable three months after Mr. Scaptura drafted the defendant’s answer, giving him and the law firm plenty of time to research the client’s case and the appropriate legal theories which could be applied to the situation. Moreover, on the return date of this motion, an application for an adjournment was not made by counsel.
The court also finds that the defendant’s attorneys continued their frivolous conduct after the lack of legal and factual basis for their conduct became apparent. Plaintiffs reply affirmation and request for sanctions contains five decisions/orders from five Judges sitting in five counties in New York State. Each of these decisions puts the defendant’s attorneys on notice that the arguments they use to defend their clients against creditors’ claims are without merit. In particular, this court finds that the words of the Honorable Dan G. Far ano, Judge of the City Court of Troy, provided clear notice to Mr. Capoccia and all the attorneys of his firm that their conduct was frivolous.
*997 In his opinion, recorded in open court on June 16, 1998, in First Deposit Natl. Bank v Carroll (Troy City Ct, Farano, J.), a case substantially similar to the one at bar, he warns Mr. Capoccia’s office as follows:
“And now I want to give the Law Offices of Mr. Andrew Capoccia fair warning in open court and on the record:
“Mr. Capoccia has been submitting these applications and submitting these Verified Answers and I feel they’re a sham and frivolous and have no merit. And in the near future I’m going to consider severe sanctions and report the matter to the Appellate Division in the Third Department * * *
“Mr. Capoccia’s office has the audacity to submit documents * * * which are a sham and frivolous * * *
“[A]nd if this continues and persists, I’m going to consider sanctions in the Court to the Appellate Division. You can communicate that to Mr. Capoccia and to his office, because I’m sick and tired of it. It’s a sham. It’s frivolous. It’s delaying a Plaintiff from collecting a legitimate debt.”
In another similar case, First Deposit Natl. Bank v Holland (Sup Ct, Albany County, Hughes, J.), decided October 14, 1998, a case where Mr. Scaptura personally argued the motion, the plaintiff asked for sanctions. That court held that since the time to appeal had not expired on another Judge’s decision, which discredited the same arguments in an identical case, a clear showing of frivolousness had not been made.
In contrast, when this motion was made, five months had passed since Judge Far ano gave his warning, and Mr. Capoccia’s office has not argued that it is attempting to appeal Judge Farano’s order. It is this court’s opinion that the frivolous conduct of Mr. Capoccia’s law office is so readily apparent that it need not hesitate any longer before imposing sanctions and awarding costs.
Accordingly, the court holds that defendant’s attorneys engaged in frivolous conduct .completely without merit in law; they had the opportunity to investigate the factual and legal basis for this conduct; and at the time they engaged in this conduct it should have been apparent that their conduct was frivolous.
COSTS AND SANCTIONS
The court may award costs for frivolous conduct in the form of reimbursement for actual expenses reasonably incurred and reasonable attorney’s fees. (22 NYCRR 130-1.1 [a].) The *998 court finds that, under the circumstances of this action, the plaintiffs request for attorney’s fees in the amount of $3,009.14 is reasonable. The plaintiffs attorneys, Forster & Garbus, have 25 years’ experience in the consumer debt collection business. While the preparation of a complaint and a routine summary judgment motion are not difficult tasks for an attorney experienced in handling these types of cases, the procedures that must be followed to see a case through to its conclusion are complex and time consuming. Furthermore, when these cases are challenged, even when the debtor’s arguments are frivolous, plaintiffs attorney must allot additional time to draft a more thorough summary judgment motion, and a detailed reply to defendant’s opposition papers.
This award of costs will be paid by Andrew F. Capoccia, L. L. C. to Forster & Garbus within 30 days of Andrew F. Capoccia, L. L. C. receiving notice of entry of this order.
In addition to awarding costs, the Rules of the Chief Administrator of the Courts also allow a court to impose financial sanctions upon an attorney engaging in frivolous conduct. (22 NYCRR 130-1.1 [a].) Sanctions of up to $10,000 may be imposed for any single frivolous occurrence. In this case, the court finds that there are two separate occurrences of frivolous conduct. First, the defendant’s attorneys submitted an answer to the plaintiffs claim which included three affirmative defenses and two counterclaims, all of which this court has concluded are frivolous. Second, defendant’s opposition to this motion not only presents arguments repeated from defendant’s answer, but it is independently frivolous because it presents new, groundless arguments which had to be separately addressed by the plaintiffs counsel and this court. As explained more fully below, a $10,000 sanction for each occurrence is appropriate.
According to the Rules of the Chief Administrator of the Courts, this order must explain why the sanction is appropriate. First, the inapplicability of the defenses, counterclaims, and the arguments that support them is so readily apparent that even the most inexperienced attorney would not present them to a court after a reasonable inquiry into their validity. Second, according to an advertisement submitted to this court, Andrew F. Capoccia, L. L. C. holds itself out to the public as an expert in this area of law. Mr. Capoccia claims to have helped hundreds of others reduce their debt. An attorney making these claims in an advertisement ought to have known that the arguments made in this action were frivolous. Third, the opinions *999 of other Judges from across New York State show that Mr. Capoccia’s firm has been repeatedly admonished for making these arguments. Fourth, neither Mr. Capoccia nor his associate, Mr. Scaptura, took the time to attend the sanction hearing in this matter; they did not submit affidavits of actual engagement to the court; and the spokesperson sent to represent the two attorneys could do nothing but give a general apology for the firm’s conduct. Finally, if Andrew F. Capoccia, L. L. C. and its associates are allowed to continue the firm’s high volume practice with just a slap on the wrist, the courts of this State will have to continue to divert their limited resources from legitimate disputes.
This court may sanction the attorney responsible for the frivolous conduct and his law firm. The court holds that Andrew F. Capoccia, L. L. C. shall be sanctioned $8,500 per occurrence and Mr. Scaptura shall be sanctioned $1,500 per occurrence. The law firm is responsible for a larger portion of the sanction because Mr. Capoccia, the apparent sole shareholder of the firm, has almost 25 years of experience as an attorney in this State. He should be aware of his firm’s activities, he should have procedures in place to review his associates’ work product, and he should have attended the sanction hearing held in this matter to answer the court’s questions regarding his firm’s practices and procedures.
Mr. Scaptura, on the other hand, was admitted to the Bar on June 24, 1997. This court is generally aware that young associates are overworked and continually learning on the job. This court recently coauthored an article on imposing sanctions. The article states that “[i]n justifying sanctions some factors to be considered are the trial counsel’s age, experience, and salary”. (Balter and Simone, How Judges Can Enforce Civility by Punishing Frivolous Conduct, NYLJ, Aug. 25, 1998, at 1, col 1, at 7, col 4.) The court gave Mr. Scaptura an opportunity to be heard on these factors. Unfortunately, Mr. Scaptura decided not to make an appearance, and the attorney who did appear on his behalf could not comment personally on Mr. Scaptura’s character.
This court is sympathetic to young attorneys who start out in this crowded profession, work long hours, and settle for jobs they have no interest in. Nevertheless, these attorneys must show the proper respect for the courts and other members of their profession by making court appearances or following the proper procedures for applying for necessary adjournments.
The only mitigating factor this court can consider here is the amount of time Mr. Scaptura has been a member of the New *1000 York State Bar. Since he has been admitted to the Bar for less than two years, this court finds that a sanction of $1,500 per occurrence is an appropriate deterrent for Mr. Scaptura and other attorneys in his position.
CONCLUSION
Accordingly, for the foregoing reasons, it is ordered that the plaintiffs motion for summary judgment is granted in the amount of $15,045.70, with interest from April 4, 1998; and it is further ordered that defendant’s answer is stricken and his counterclaims are dismissed; and it is further ordered that Andrew F. Capoccia, L. L. C. shall pay Forster & Garbus $3,009.14 within 30 days of receiving notice of entry of this order; and it is further ordered that Andrew F. Capoccia, L. L. C. shall deposit with the Lawyers’ Fund for Client Protection $17,000 no later than April 30, 1999; and it is further ordered that Michael Scaptura, Esq. shall deposit with the Lawyers’ Fund for Client Protection $3,000 no later than April 30, 1999; and it is ordered that Andrew F. Capoccia, L. L. C. and Michael Scaptura shall submit affidavits to this court and to the Grievance Committee of the Third Judicial District by May 5, 1999 stating that the costs and sanctions have been paid on time, and that their client has not been billed for these payments, along with documentary proof of payment.
This opinion is referred to the Grievance Committee of the Third Judicial District. In the event that Andrew F. Capoccia, L. L. C. or Michael Scaptura fail to comply with this court’s direction, such conduct shall also be reported to the Grievance Committee.