OPINION OF THE COURT
Joseph C. Teresi, J.
Petitioner commenced this proceeding seeking an order (1) permanently enjoining respondent from repeatedly selling any consumer goods or services for an amount which represents an unconscionably excessive price during any abnormal disruption of the market for such goods pursuant to General Business Law § 396-r and Executive Law § 63 (12) (also known as price gouging). Petitioner further seeks an order directing the respondent to remit any excess profits resulting from the alleged price gouging to the State; to pay a civil penalty for each violation of alleged price gouging, pursuant to General Business Law § 396-r (4); and to pay petitioner’s costs in the amount of $2,000 pursuant to CPLR 8303 (a) (6). The respondent opposes the motion with an answer.
After a full review of the record this court will grant petitioner’s petition requesting an injunction, pursuant to General Business Law § 396-r, award costs in the amount of $2,000 pursuant to CPLR 8303 (a) (6), and penalties against the respondent in the amount of $2,500 pursuant to General Business Law § 396-r (4). This court, for disgorgement and restitution purposes, is unable to determine the specified incidents of alleged price gouging or the individual consumers that were harmed and therefore is unable to determine an appropriate amount for remittance to the State or restitution to the consumers. Therefore this court will deny petitioner’s petition in respect to the request for disgorgement of excess profits as a result of alleged price gouging and restitution for consumers.
The action was commenced on or about August 20, 2006 by the petitioner seeking to enjoin the respondent from alleged price gouging. The respondent is a New York corporation in the business of selling retail gasoline at 166 Main Street, Schaghticoke, Rensselaer County, New York. The respondent is an ExxonMobil station, meaning it exclusively sells ExxonMobil products, including exclusive purchase of gasoline from Exxon-Mobil at the Port of Albany. The petitioner contends that during the period after Hurricane Katrina (which devastated the Gulf Coast region of the United States and had a substantial effect on this nation’s oil supply on Aug. 29, 2005), that the respondent charged consumers an unconscionably excessive price *493 for gasoline, which violates New York’s price gouging statute. In addition, petitioner contends that repeated violations of the price gouging statute violate Executive Law § 63 (12) which prohibits repeated illegalities. The respondent contends that the prices charged during that time period were not unconscionably excessive and were charged in response to its supplier’s price schedule.
Specifically, both parties agree that prior to August 25, 2005, ExxonMobil (Wever’s supplier) was charging a base price of $1.90 per gallon for regular 87 octane fuel. However, consumers at Wever’s ExxonMobil station in Schaghticoke were paying $2.73 for that gasoline, a price “markup” (the difference between the price charged by the supplier and the price the gas station charges to consumers) of 83$ per gallon. On August 29, 2005 Hurricane Katrina struck the United States’ Gulf Coast region, devastating the area in a variety of ways, but specifically the nation’s oil and gasoline suppliers. As a result of the hurricane many refineries, drilling operations and pipelines were flooded or disabled, creating disruption in the normal production of oil.
On August 31, 2005, two days after the hurricane, ExxonMobil charged a base price of $2.17 per gallon for regular 87 octane fuel. The respondent thereby charged its consumers $3.14 per gallon, representing a price markup of 97$ per gallon, a difference of 14$ per gallon markup from pre-hurricane to post-hurricane. On September 1, 2005, Wever did not receive an additional delivery of gas but raised its retail price to $3.25 per gallon and then to $3.60 per gallon, a markup of $1.08 and $1.43, respectively. From September 2, 2005 to September 9, 2005, ExxonMobil charged $2.57 per gallon for regular 87 octane gasoline and steadily dropped its prices to $2.31 per gallon. In response to the drop, Wever steadily dropped its retail prices but maintained a price markup of over $1.00 per gallon for regular 87 octane fuel.
General Business Law § 396-r (2) provides that,
“[d]uring any abnormal disruption of the market for consumer goods and services vital and necessary for the health, safety and welfare of consumers, no party within the chain of distribution of such consumer goods or services or both shall sell or offer to sell any such goods or services or both for an amount which represents an unconscionably excessive price.”
*494 The Legislature has further defined “abnormal disruption of the market” to mean
“any change in the market, whether actual or imminently threatened, resulting from stress of weather, convulsion of nature, failure or shortage of electric power or other source of energy, strike, civil disorder, war, military action, national or local emergency, or other cause of an abnormal disruption of the market which results in the declaration of a state of emergency by the governor.” (General Business Law § 396-r [2].)
This court finds that the devastation caused by Hurricane Katrina in late August 2005 was the stress of weather and a convulsion of nature that resulted in a national emergency and caused an abnormal disruption in the gasoline markets of this nation. This court further finds that a declaration from the Governor of the State of New York is unnecessary to invoke the price gouging statute in this case, and in fact is only one of a variety of instances where price gouging is invoked, as dictated by statute. Therefore, any party in the distribution chain of gasoline at the time of the abnormal disruption was prohibited from selling gas for an amount that is unconscionably excessive to consumers. “Whether a price is unconscionably excessive is a question of law for the court.” (General Business Law § 396-r [3].) The statute further provides that evidence to support an unconscionably excessive price includes whether
“(a) the amount charged represents a gross disparity between the price of the goods or services which were the subject of the transaction and their value . measured by the price at which such consumer goods or services were sold or offered for sale by the defendant in the usual course of business immediately prior to the onset of the abnormal disruption of the market or (b) the amount charged grossly exceeded the price at which the same or similar goods or services were readily obtainable by other consumers in the trade area, and, in addition, that (c) the amount charged by the merchant was not attributable to additional costs imposed by its suppliers, shall constitute prima facie proof of a violation of this section in any proceeding commenced by the attorney general pursuant to subdivision four hereof.” (General Business Law § 396-r [3].)
In other words,
*495 “[a] showing of a gross disparity in prices, coupled with proof that the disparity is not attributable to supplier costs, raises a presumption that the merchant used the leverage provided by the market disruption to extract a higher price. The use of such leverage is what defines price gouging, not some arbitrarily drawn line of excessiveness.” (People v Two Wheel Corp., 71 NY2d 693, 698 [1988].)
Here, this court has considered that the price of the gasoline at Wever Petroleum’s ExxonMobil station in Schaghticoke, New York, immediately before Hurricane Katrina was $2.73 per gallon for regular 87 octane fuel, with a markup of 83$ per gallon. In contrast, the price of gasoline at Wever Petroleum’s Exxon-Mobil Station immediately following Hurricane Katrina was $3.14, $3.25, and $3.60 per gallon for regular 87 octane fuel; this pricing has a markup of 97$, $1.08, and $1.43, respectively. Therefore, in considering the amount of the markup and the percentages associated with the prices charged by ExxonMobil and those charged by Wever Petroleum before and after Hurricane Katrina, this court finds that there exists a gross disparity between a 83$ per gallon markup pre-Hurricane Katrina and a 97$, $1.08 or $1.43 markup post-Hurricane Katrina. Further, this court finds that the respondent’s claims, even if true, that its increase in retail price was the result of a supplier increase, failed to rebut the inference that the price increases were attributable to respondent’s use of the leverage provided by the market disruption and were therefore unconscionably excessive. While Wever did raise prices in accordance with an increase in ExxonMobil’s base cost, Wever’s increase far exceeded the needed increase for Wever to maintain a similar pre-hurricane profit or to generate the required revenue to purchase gasoline from ExxonMobil the next business day and were unconscionably excessive.
Therefore, after a full review of the record, this court, in its discretion will grant petitioner’s petition requesting an injunction enjoining respondent, its successors, agents or assigns from selling or offering to sell any consumer goods or services for an amount which represents an unconscionably excessive price during any abnormal disruption of the market for such goods. In accordance with General Business Law § 396-r (4), this court “shall impose a civil penalty in an amount not to exceed ten thousand dollars.” In this case the court shall impose a civil penalty against respondent in the amount of $2,500 for price gouging.
*496 As previously stated, this court is unable to determine specific instances of price gouging and as such denies petitioner’s petition requesting disgorgement and restitution for consumers. Generally, restitution for consumers awarded in price gouging cases is awarded to consumers who have submitted affidavits in support of the State’s petition or whom were specifically identified to the court as alleged to have suffered harm from the price gouging. (People v Chazy Hardware, 176 Misc 2d 960 [Sup Ct, Clinton County 1998]; People v Two Wheel Corp., 71 NY2d 693, 698 [1998].) In this case, the petitioner has failed to provide this court any information as to how many consumers suffered harm as a result of the respondent’s gouging and no affidavits were provided in support of the petition. Therefore, without any information whatsoever regarding the number of consumers who suffered harm, this court, in its discretion, will not award restitution.
Lastly, CPLR 8303 (a) (6) provides that a court, in its discretion, may award to the plaintiff, in actions brought by the Attorney General, costs (not exceeding $2,000) for actions brought under Executive Law § 63 (12). Here, the petitioner brought this action under both General Business Law § 396-r and Executive Law § 63 (12) and this court finds that the respondent committed a number of distinct and separate illegal acts which affected more than one person, therefore violating Executive Law § 63 (12). Therefore, this court, in its discretion, will award the petitioner a sum of $2,000 for costs.